[Civ. No. 34288.  Second Dist., Div. Two.  Feb. 24, 1970.]

JOHN GUTIERREZ, Plaintiff and Appellant, v.
GAFFERS AND SATTLER CORPORATION, Defendant and Respondent.

## Counsel

Edward S. Cooper for Plaintiff and Appellant.

Tyre & Kamins and Peter M. Appleton for Defendant and Respondent.

## Opinion

**FLEMING, J.**—Plaintiff Gutierrez brought this action for damages and declaratory relief against his former employer (Gaffers and Sattler) and his union (United Steel Workers of America, Local 2018). In his fourth amended complaint he pleaded three causes of action: the first for damages against Gaffers and Sattler for wrongful discharge in breach of a collective bargaining agreement; the second for damages against the union for failure to prosecute his grievance in good faith; the third for a declaration of rights

against both defendants under the collective bargaining agreement. The trial court overruled the demurrer of the union but sustained without leave to amend the demurrer of Gaffers and Sattler to the fourth amended complaint and dismissed the action against it. Plaintiff appeals the judgment of dismissal.

According to the complaint, plaintiff was an appliance serviceman employed by Gaffers and Sattler and a beneficiary of the collective bargaining agreement between his employer and United Steel Workers of America, Local 2018. That agreement prohibited discrimination against any employee by the employer or by the union because of race, religion, creed, color, sex, or national origin. It also prohibited the discharge of an employee without good and sufficient cause. To resolve disputes under the agreement the parties established a four-step grievance procedure which culminated in arbitration.

On 17 February 1967 plaintiff left work for the day about 5:15 p.m. driving with permission his employer's truck, which he had previously reported in need of a brake adjustment. About 7:10 p.m. plaintiff got in a traffic accident with another vehicle. Plaintiff told the investigating officer for the California Highway Patrol he had drunk a pitcher of beer prior to the accident, an admission which later appeared in the accident report. Plaintiff was not charged with a crime, and he avers he was not drunk at the time of the accident.

On 8 March plaintiff's employment was terminated because of the accident. The following day he filed a written grievance under the provisions of the collective bargaining agreement.

On 14 March a hearing on the grievance was held, and plaintiff contended his discharge violated his rights under the collective bargaining agreement because: (1) the company discriminated against him as a Mexican-American, and as evidence of such discrimination he cited two instances of past discrimination, one of which caused him to file a complaint with the California Fair Employment Practice Commission; (2) Richard Rollins, industrial relations manager of the company and the person who discharged plaintiff, discriminated against him, both because plaintiff was a Mexican-American and because Rollins wanted plaintiff's job for his son; (3) the accident did not constitute good cause for his discharge since no finding had been made that plaintiff was drunk and no charges had been filed against him. At the hearing Rollins, representing the company, told plaintiff he had no defense, that nothing plaintiff could say would change his [Rollins'] mind, that if plaintiff applied for unemployment benefits anyone asking the company for references would be told that plaintiff had

been discharged for drinking. Rollins then told plaintiff that if he agreed to quit and not apply for unemployment benefits the company would furnish him good references and would not reveal his discharge for drinking. Plaintiff was intimidated and coerced by such statements, and as a consequence he accepted the "deal" and agreed to quit his job. Five months later on 16 August 1967 plaintiff demanded that the company and the union arbitrate his grievance under the collective bargaining agreement. Subsequently he filed this action against both company and union.

■ Plaintiff seeks to enforce a right under the collective bargaining agreement to be discharged only for cause. But to enforce rights under that agreement he must exhaust the remedies which the agreement provides. The same article of the agreement which restricts discharges to cause requires that "grievances involving discharge shall be placed in arbitration or dropped if not settled within fifteen (15) working days from the date of discharge." Here, the company relies on plaintiff's abandonment of his grievance and his failure to pursue it to arbitration within the 15-day period specified in the agreement. It thus invokes the defense of failure to exhaust contractual remedies, a defense described in *Vaca* v. *Sipes* (1967) 386 U.S. 171, 184 [17 L.Ed.2d 842, 854, 87 S.Ct. 903]: "[I]f the wrongfully discharged employee . . . resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted. Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by the terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement."

To excuse his failure to pursue his grievance to arbitration within 15 days plaintiff charges that the union refused to properly prosecute his grievance and the company and the union coerced him into accepting a settlement. Plaintiff thus seeks to bring his claim within the exception to the exhaustion-of-contractual-remedies rule, an exception which permits an employee to seek judicial enforcement of his contractual rights if the union has wrongfully refused to invoke the grievance procedure. (*Vaca* v. *Sipes, supra,* at p. 185 [17 L.Ed.2d at p. 854].) But here the exception has no direct application, because a grievance had been filed and the third stage of a four-step grievance procedure had been reached. Consequently, to excuse lack of compliance with the contract plaintiff must establish that he abandoned his grievance and accepted a settlement because he was intimidated and coerced by the company and the union into so doing.

As to the company, plaintiff charges that the latter's representative told him that he had no case and that if he insisted on being discharged for cause his discharge would be reported to prospective employers as one for drinking. Do such statements at a grievance hearing amount to intimidation and coercion? The hearing was an adversary proceeding at which plaintiff, represented by the union, was attempting to set aside the discharge, and the company, represented by Rollins, was attempting to sustain the discharge as one for cause. Patently, plaintiff and the company were open, disclosed adversaries on opposite sides of the issue. As such, each was entitled to maintain its position, advance its arguments, defend against the arguments of the opposing party, and initiate negotiations for the disposition of the grievance. We think an employer within its rights in stating its position at an adversary hearing, even when its statement is strongly put. Here the company's position was that plaintiff had been discharged for drinking-driving, and it was engaged in upholding that discharge as one for cause. We do not think plaintiff can justifiably claim that he was coerced and intimidated by the company's insistence he had no defense or by its argument on the disadvantages which would accrue to him if he should press his grievance and lose. When in return for good references plaintiff agreed to abandon his grievance and forego arbitration under the collective bargaining agreement, responsibility for that decision cannot be laid at the company's doorstep.

As to the union, plaintiff charges that he was intimidated and coerced into abandoning his grievance by union conduct which was arbitrary, discriminatory, and performed in bad faith. Plaintiff charges that the union, knowing of the discrimination and nepotism practiced by the company, refused to put on a defense on his behalf, refused to present evidence that the truck's brakes needed adjustment, and urged plaintiff to accept the offered settlement, telling him that his admission he had drunk a pitcher of beer before the accident left him no defense. These averments of union conduct do not present facts sufficient to show the union acted in bad faith or that it violated its statutory duty of fair representation. (*Vaca* v. *Sipes, supra,* at pp. 190-193 [17 L.Ed.2d at pp. 857-860]; *Balowski* v. *International U.A.W.* (6th Cir. 1967) 372 F.2d 829, 833-835; *Palmieri* v. *United Steelworkers of America* (W.D.Pa. 1967) 270 F.Supp. 5, 7.) Plaintiff had not alleged what further investigation of the accident the union could have made, what witnesses it could have produced, or even that improperly adjusted brakes caused the accident. Nor has he suggested reasons why drinking-driving in his employer's truck did not qualify as good and sufficient cause for discharge. The excerpts from plaintiff's complaint affirmatively show that the advice of the union to plaintiff to drop his grievance reflect a realistic appraisal by the union of the situation with which plaintiff

was confronted. It is apparent that the union representative acted in a good faith belief that he was serving plaintiff to his advantage by not pressing his grievance to arbitration. A wide range of reasonableness and discretion is allowed a statutory representative in serving members of the unit it represents. (*Ford Motor Co.* v. *Huffman,* 345 U.S. 330, 338 [97 L.Ed. 1048, 1057, 73 S.Ct. 681].) ■ For this reason the general rule is that "[a]n action will not lie against a union for failure to process a grievance absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose or such gross mistake or inaction as to imply bad faith." (*Balowski* v. *International U.A.W., supra,* at p. 834; *Law* v. *Joint Checker Labor Relations Committee* (9th Cir. 1969) 412 F.2d 795; *Neider* v. *J. G. Van Holten & Son, Inc.* (1969) 41 Wis.2d 602 [165 N.W.2d 113].) Plaintiff's allegations of bad faith in the complaint amount to no more than legal conclusions, which are insufficient to sustain a pleading. ■ As the court said in *Balowski* v. *International U.A.W., supra,* at p. 835: "The allegations of a complaint alleging the breach of a Union's duty of fair representation must contain more than 'conclusory statements alleging discrimination. In particular plaintiffs must make a showing that the action or inaction of the statutory representative complained of was motivated by bad faith, for the gravamen of the rule is "hostile discrimination." ' "

We conclude that plaintiff failed to plead facts which would show arbitrary, discriminatory, or bad faith conduct by the union which would justify his abandonment of his grievance and his failure to pursue his remedies under the collective bargaining agreement.

The judgment is affirmed.

Roth, P. J., and Wright, J., concurred.