[Civ. No. 41434. Second Dist., Div. Five. Feb. 27, 1974.]

WILLIAM SHAW, Plaintiff and Appellant, v.
METRO-GOLDWYN-MAYER, INC., et al.,
Defendants and Respondents.

**588**

COUNSEL

Feinerman, Furman & Klein and Earl Klein for Plaintiff and Appellant.

Wyman, Bautzer, Rothman & Kuchel, Gary G. Neustadter, Bodkin, Breslin & Luddy and Timothy J. Sargent for Defendants and Respondents.

OPINION

**ASHBY, J.**—Plaintiff (appellant herein) was employed by Metro-Goldwyn-Mayer, Inc. (MGM), as a regular chief set electrician. He was laid off from work effective February 12, 1971. He contended that the discharge was in violation of a clause of a collective bargaining agreement allegedly guaranteeing his employment. Grievance procedures initiated by plaintiff and his local union, Local 728, Studio Electrical Technicians (Local 728), of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada (IATSE), were terminated at step two when George Flaherty, vice president of the IATSE, agreed with MGM's interpretation that plaintiff's discharge was not in violation of the collective bargaining agreement.

Plaintiff filed suit in the Superior Court of Los Angeles County against MGM, IATSE, Local 728, Flaherty (respondents herein), and Does 1 through 200 for damages for breach of duty of fair representation, breach of contract, and for declaratory relief adjudging the grievance procedures to be invalid. Following demurrers to the second amended complaint, the trial court sustained the demurrers of IATSE, Local 728 and Flaherty without leave to amend, for lack of jurisdiction, and sustained MGM's demurrer, without leave to amend, on grounds of failure to state facts sufficient to constitute a cause of action and lack of jurisdiction. This appeal is from the judgments of dismissal subsequently entered. (Code Civ. Proc. §§ 581, subd. 3, 581d.)

## FACTS

The facts pleaded in the second amended complaint are as follows: Plaintiff was employed by MGM since 1936 as a set electrician, and, for more than 10 years, as regular chief set electrician, pursuant to collective bargaining agreements between IATSE, Local 728 and MGM. The position of regular chief set electrician was one requiring special and unique qualifications, experience and skills, and the persons qualifying for that kind of position were few and were valuable employees difficult to replace. "As a result of the foregoing," MGM on one side, and IATSE and Local 728, representing plaintiff and others holding the same kind of position, on the other side, entered into a written agreement, the purpose of which was "to give plaintiff, (and others similarly situated) permanent employment regardless of whether there was work to perform, so long as plaintiff and the others, each respectively kept themselves available to perform services when needed by [MGM] and were each qualified to perform the work."

That provision was continued in various negotiations and was made a part of every collective bargaining agreement from its inception in 1961 to and including the present collective bargaining agreement which is effective from February 1, 1969, through January 31, 1973. A copy of the provision is set forth as Exhibit A to the second amended complaint and incorporated by reference. This provision, paragraph 56, is as follows: "56. CARRY-THROUGH—A regular Chief Set Electrician (Gaffer) designated as such by Producer on January 31, 1965, under the Agreement of January 31, 1961, shall personally continue as such as long as he is qualified and available to perform such duties. If for any reason he is terminated, resigns, dies or retires or is not so qualified or available, he shall not be entitled to any such guaranteed employment and Producer shall not be obligated to replace him.

"If such person elects to leave the employ of Producer as a Chief Set Electrician (Gaffer) he shall nevertheless retain his Studio Seniority in the other job classifications, only, under this agreement, subject to the provisions of paragraph 68. d).

"Chief Set Electricians (Gaffer) hired by Producer after January 31, 1965 shall not be entitled to any such guaranteed employment."

It is alleged that on or about January 19, 1971, representatives of MGM and IATSE met, and breached the collective bargaining agreement. A letter dated January 20, 1971, on the letterhead of MGM studios, Benjamin Kahane, director of industrial relations, addressed to Flaherty and others is attached as Exhibit B to the second amended complaint and

incorporated by reference. The letter opens: "May this serve to confirm our understandings of yesterday afternoon concerning the anticipated curtailment of production at MGM's Culver City studios." The letter then lists the "carry-through" personnel, including plaintiff, and states in part: "It is anticipated that commencing with the first week of February, there will be no MGM pictures shooting at the Culver City studios. At such time, these carry-through men shall be laid off but shall receive at the time of such layoff two weeks of severance pay. This severance pay being in lieu of the two weeks severance pay they would otherwise receive if they were laid off for a period of 90 days under Paragraph 74 of the Collective Bargaining Agreements. If, due to the continued curtailment of MGM production in Culver City, they continue to be laid off for a period of 270 days, then in accordance with said Paragraph 74, they shall receive the balance of their severance pay.

"At such time as MGM resumes production at its Culver City studios, the above listed carry-through employees shall be reinstated to their carry-through status. They may, however, be assigned to any position on a production company within the jurisdiction of their respective unions but shall continue to be compensated at the key rate of pay."[1]

It is alleged in the complaint that IATSE, Flaherty and Does 1 through 15 had a duty to represent plaintiff in labor negotiations fairly, loyally and in good faith and that they violated this duty by making such agreement "which eliminated the carry-through provision guaranteeing plaintiff permanent employment pursuant to the provision set forth as Exhibit A," and that by virtue of said breach of duty and as a proximate result thereof plaintiff was deprived of his employment and discharged, effective February 12, 1971, in violation of the collective bargaining agreement. It is alleged that this duty was violated "in an arbitrary, wilful and bad faith manner" and "wilfully, in bad faith and with wanton disregard for the rights of plaintiff. . . ."

These allegations constituted the first cause of action against IATSE and Flaherty. The second cause of action against IATSE and Flaherty involved their part in the grievance procedures instituted by plaintiff when he learned that he was to be discharged. Plaintiff attached as Exhibit C to the complaint and incorporated by reference a copy of article 7 of the collective bargaining agreement, detailing the grievance procedure. It provides three steps in the process. The first step involves an attempt to

---

[1] In this case plaintiff alleges he was unemployed from February 12, 1971, to May 10, 1971. It is not made clear in the complaint whether he was reemployed by MGM or in what capacity or location.

resolve the matter between the local union and the producer. If the grievance is not settled in step one within 10 days, the aggrieved party may proceed to step two, which involves the International representative of the IATSE and a representative of the Association of Motion Picture and Television Producers, Inc. (AMPTP).[2] If no decision is rendered in step two within 10 days, the aggrieved party may demand arbitration.

Upon receiving notice of his discharge, plaintiff immediately requested Local 728 to institute grievance procedures. He was advised by the local that a prior meeting held between it and MGM was, in effect, step one and that he should invoke step two. A hearing under step two was held March 2, 1971. A copy of the written decision of the grievance committee, signed by Eugene Arnstein, representing AMPTP, and Flaherty, representing IATSE, was attached as Exhibit D to the complaint. That decision states as follows:

"Bill Shaw, Chief Set Electrician, employed on a carry-through status by Metro-Goldwyn-Mayer Inc., was notified (approximately January 15, 1971) by Metro-Goldwyn-Mayer that he was going to be laid off, effective as of January 29, 1971, due to a shut down of production.

"The Union contends that Metro-Goldwyn-Mayer violated paragraph 56. Carry-through, of the collective bargaining agreement between them by the lay off of Mr. Shaw.

"It is the position of the Company that paragraph 56. is not applicable when there is no work to be performed, due to a shut down of production.

".                                                                                              .

"After discussing the above matter, the Grievance Committee determined that the lay off of Mr. Shaw, due to a shut down of production is not in violation of paragraph 56. Carry-through, of the collective bargaining agreement. However, when production is resumed, Mr. Shaw shall be reinstated by Metro-Goldwyn-Mayer, as a Chief Set Electrician on a carry-through status." Plaintiff requested step three arbitration, but was refused.

It is alleged that the step two grievance procedure was invalid and was conducted by IATSE, Flaherty and Does 1 through 15 in an arbitrary manner in violation of their obligation "to represent plaintiff in the grievance procedures fairly, loyally and in good faith, and . . . to present

[2]AMPTP was originally named as an additional defendant, but a dismissal was entered as to it, which is not challenged on this appeal.

plaintiff's side of the dispute . . . ." It is alleged that when plaintiff entered the hearing room, Joseph Bernay, of the IATSE, told him "[t]he elimination of the carry-through is the decision of the International Union. You don't have a chance." Plaintiff told Bernay, "I want you to disqualify yourself because you do not intend to represent me." At that time Flaherty and Eugene Arnstein entered the room, and when plaintiff informed Flaherty of this conversation with Bernay, Flaherty said, "I rule with the producers." An agent of Local 728 stated that union and employer should abide by the collective bargaining agreement and Flaherty replied, "I'm the boss. I'm running this."

It is alleged that the grievance procedure was invalid in that (a) the committee which heard the grievance at step two consisted in part of Flaherty, who "was also the negotiator with [MGM], who negotiated the purported change in the collective bargaining agreement which led to plaintiff's layoff" so that Flaherty was passing upon his own conduct; (b) the step two hearing was not fair because Flaherty had prejudged the matter; and (c) the decision was arbitrary, unreasonable and unfaithful to the "plain and unambiguous terms of the collective bargaining agreement." Furthermore, plaintiff contended that he was entitled to have his grievance decided by an impartial arbitrator.

In his related fifth cause of action, plaintiff in effect requested the declaratory judgment against all defendants that the grievance procedures were invalid and denied him due process and equal protection of the law.

The third and fourth causes of action involved MGM. In the third cause of action it is alleged that MGM "wrongfully breached the collective bargaining agreement on or about January 19, 1971, and knew or should have known that defendants IATSE, Flaherty and Does 1 through 15 were violating their duty to represent plaintiff in a fair, proper and good faith manner with respect to negotiation of the change in paragraph 56 of the collective bargaining agreement and with respect to the grievance procedure." In the fourth cause of action it is alleged that MGM "wrongfully breached the collective bargaining agreement on or about January 19, 1971, by refusing to perform pursuant to paragraph 56 and by laying-off plaintiff," and further that, "The grievance procedure described above as carried out in plaintiff's case did not afford plaintiff a full and fair hearing and reached an arbitrary and unreasonable decision."

As to exhaustion of internal remedies the complaint alleged that, "Plaintiff denies that any internal remedies are required of him by the collective bargaining agreement or by the Union's constitution and bylaws,

but alleges that if such are required, he has exhausted all of the internal procedures required of him or has been excused from pursuing those internal remedies."

## DISCUSSION

The primary issue on this appeal is whether the trial court erred in holding that it lacked jurisdiction because exclusive jurisdiction is vested in the National Labor Relations Board (NLRB) pursuant to the National Labor Relations Act.[3] We hold that it did.

In *San Diego Unions* v. *Garmon,* 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773], the Supreme Court grappled with "one of the most teasing and frequently litigated areas of industrial relations," the question of the extent to which congressional protection of "concerted activities" and prohibition of unfair labor practices in sections 7 and 8 of the National Labor Relations Act[4] preclude the application of the laws of the several states, and require a single uniform national rule.

In resolving that question, the court noted that Congress had created a special tribunal, the NLRB, with specially designed procedures, evidently to obtain uniform application of its substantive rules and to avoid conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. (*Id.,* at pp. 242-243 [3 L.Ed.2d at pp. 781-782].) The court therefore held that if the activity in question is "arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." (*Id.,* at p. 245 [3 L.Ed.2d at p. 783].)

It may be assumed that the acts of the union and employer of which appellant complains are arguably unfair labor practices under section 8 of the National Labor Relations Act.[5] The question is whether the allegations of the complaint are sufficient to bring this case within certain exceptions to the *Garmon* rule.

---

[3]29 United States Code Annotated section 151 et seq.

[4]29 United States Code Annotated sections 157, 158.

[5]See *Vaca* v. *Sipes,* 386 U.S. 171, 178, 186 [17 L.Ed.2d 842, 850, 855, 87 S.Ct. 903]. According to exhibits attached to the demurrer of IATSE, appellant filed charges with the National Labor Relations Board on March 8, 1971, alleging violations of section 8(b)(1)(A) by the union and of sections 8(a)(1) and 8(a)(3) by the employer. The disposition of these charges is not included in the record on appeal.

## MGM

■ As to MGM it is alleged in the third and fourth causes of action that MGM breached paragraph 56 of the collective bargaining agreement. Under section 301(a) of the Labor-Management Relations Act,[6] suits for violation of contracts between an employer and labor organization may be brought in the federal courts, indicating congressional intent that the interpretation of such agreements is not exclusively a function of the NLRB. Thus it is well established that a suit for breach of contract based on a collective bargaining agreement is not subject to the *Garmon* rule and may be brought in state or federal court. (*Dowd Box Co.* v. *Courtney,* 368 U.S. 502, 503-506 [7 L.Ed.2d 483, 484-486, 82 S.Ct. 519]; *Teamsters Local* v. *Lucas Flour Co.,* 369 U.S. 95, 101-102 & fn. 9 [7 L.Ed.2d 593, 597-598, 82 S.Ct. 571]; *Smith* v. *Evening News Assn.,* 371 U.S. 195, 197 [9 L.Ed.2d 246, 249, 83 S.Ct. 267]; *Vaca* v. *Sipes, supra,* 386 U.S. 171, 183-184 [17 L.Ed.2d 842, 853-854, 87 S.Ct. 903]; *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union,* 69 Cal.2d 713, 722 [73 Cal.Rptr. 213, 447 P.2d 325]; *United Concrete Pipe Corp.* v. *Laborers' Local No. 89,* 231 Cal.App.2d 315, 317-318 [41 Cal.Rptr. 816].) Since the complaint herein alleged a breach of the collective bargaining agreement by the employer, it was within the trial court's jurisdiction.

MGM argues that the "basic conduct from which appellant seeks relief" is that of the union in negotiating with MGM with respect to interpretation of the provision, and that the allegations of breach of contract are only a "convenient characterization." We disagree. If, as MGM urges, we look to the substance of the case rather than the labels, the gist of appellant's complaint is that he was discharged by MGM in violation of paragraph 56 of the collective bargaining agreement.

The cases cited by respondents are not controlling.[7] In *Adams* v. *Budd Company* (3d Cir. 1965) 349 F.2d 368, 369-370, the suit was not within section 301(a), for the technical reason that it was not for violation of a "contract between an employer and a labor organization representing employees" but of rights which the plaintiffs asserted were "independently, and pre-agreement, vested in them by their 'contract of hire.' " In *Beriault* v. *Local 40, Super Cargoes & Check., I. L. & W. U.* (D. Ore. 1972) 340

---

[6]29 United States Code Annotated section 185(a).

[7]Federal law governs as to both the employer and union causes of action. (*Teamsters Local* v. *Lucas Flour Co., supra,* 369 U.S. 95, 102-103 [7 L.Ed.2d 593, 598-599]; *Vaca* v. *Sipes, supra,* 386 U.S. 171, 177 [17 L.Ed.2d 842, 850]; *O'Malley* v. *Wilshire Oil Co.,* 59 Cal.2d 482, 486 [30 Cal.Rptr. 452, 381 P.2d 188].)

.F.Supp. 155, the court said plaintiffs' "basic and underlying complaint is really directed to the terms of [the collective bargaining] agreement itself. The very acts of the defendants which the plaintiffs denominate as discriminatory and arbitrary are acts authorized by the contract. Plaintiffs admit that complete relief by this court would necessitate a revision of that contract." (*Id.,* at p. 156.)

Here, although it is argued that MGM merely negotiated a new contract or modification with the union, this is not conclusively shown by the pleadings and attached exhibits. It is not clear whether there was a purported modification of the contract or merely an agreement on interpretation of its original meaning. Only paragraph 56 of the collective bargaining agreement and the letter from MGM's director of industrial relations were before the court on demurrer. There is no other evidence of the circumstances of the alleged agreement. Without additional evidence we cannot say that the pleading shows there was a valid modification of a collective bargaining agreement, such as to relieve MGM entirely from defending the charge that it violated paragraph 56. The allegations of breach of paragraph 56 sufficiently establish the court's jurisdiction under the breach of contract exception to *Garmon.*

■ Nor can the sustaining of MGM's demurrer be upheld on the alternative ground that the complaint failed to state facts sufficient to constitute a cause of action. MGM urges that the allegations and exhibits to the complaint established that the reason for appellant's discharge was MGM's shutting down production at its Culver City studios and that, under such circumstances, appellant's interpretation of paragraph 56 was, as a matter of law, patently without merit. Respondents argue that the contract could not possibly mean plaintiff would be paid while he was qualified and available for work even when there was no work to be done. IATSE argues that plaintiff's position would amount to forbidding MGM's "going out of business."

Again, we emphasize that the instant case is before us on plaintiff's pleading alone. Plaintiff alleged in his complaint that "the position of regular chief set electrician was one requiring special and unique qualifications, experience and skills, and the persons qualifying for that kind of position were and are few and were and are valuable employees difficult to replace. As a result of the foregoing, [MGM] on one side, and IATSE and Local 728, representing plaintiff and others holding the same kind of position, on the other side, entered into a written agreement starting in 1961 to give plaintiff, (and others similarly situated) permanent employment regardless of whether there was work to perform, so long as plaintiff and the others,

. . . kept themselves available to perform services when needed by [MGM] and were each qualified to perform the work."

Plaintiff may well be unable to sustain his interpretation of the contract at trial. But he never had an opportunity to introduce extrinsic evidence that his interpretation is what the parties intended when they entered into the agreement. We think the language of paragraph 56 is sufficiently ambiguous, when read in light of plaintiff's allegations as to the purpose of the provision, that extrinsic evidence of its meaning would be admissible. (*Coast Bank* v. *Minderhout,* 61 Cal.2d 311, 315 [38 Cal.Rptr. 505, 392 P.2d 265]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 402, pp. 2059-2061; see *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 37-40 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].)

It is not entirely clear from the complaint and exhibits whether the alleged "shut down" in production at the Culver City studios was, or was anticipated to be, temporary or permanent, or whether other MGM facilities in need of a chief set electrician would be in operation. It is not inconceivable that an employer, wishing to retain the services of a uniquely skilled employee who would be difficult to replace, could contract to keep the employee on the payroll even during temporary shut downs. If this is what the parties intended, plaintiff should have a chance to prove it.

■ Obviously, we do not hold that plaintiff's interpretation of the contract is valid. We merely hold that it was error to resolve the issue against him solely on his own pleading. In ruling on a demurrer, the likelihood that the pleader will be able to prove his allegations is not the question. (*Alcorn* v. *Anbro Engineering, Inc.,* 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

## IATSE

■ As to appellant's causes of action against the union, the jurisdictional question is whether this suit falls within the exception to exclusive NLRB jurisdiction delineated in *Vaca* v. *Sipes, supra,* 386 U.S. 171 [17 L.Ed. 2d 842, 87 S.Ct. 903]. In that case the Supreme Court held that a violation of the union's duty of fair representation, the duty to represent all members without hostility or discrimination toward any and to exercise its discretion with complete good faith, is subject to the jurisdiction of the courts, despite the fact that the NLRB, in 1962, interpreted such hostile discrimination to be an unfair labor practice in violation of section 8(b) of the National Labor Relations Act. Said the court: ". . . the duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor

law. Were we to hold, as petitioners and the Government urge, that the courts are foreclosed by the NLRB's *Miranda Fuel* decision [*Miranda Fuel Company* (1962) 140 NLRB 181, enforcement den. (2d Cir. 1963) 326 F.2d 172] from this traditional supervisory jurisdiction, the individual employee injured by arbitrary or discriminatory union conduct could no longer be assured of impartial review of his complaint, since the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint. . . ." (*Vaca* v. *Sipes, supra,* 386 U.S. at p. 182 [17 L.Ed.2d at p. 853].)

■ It is not sufficient, however, that the conduct of the union's representative was mistaken; it must be arbitrary or in bad faith. (*Id.,* at p. 193 [17 L.Ed.2d at p. 859].) There must be fraud, deceitful action, dishonest conduct or discrimination which is intentional, severe, and unrelated to legitimate union objectives. (*Motor Coach Employees* v. *Lockridge,* 403 U.S. 274, 299, 301 [29 L.Ed.2d 473, 490, 491, 91 S.Ct. 1909]; *Humphrey* v. *Moore,* 375 U.S. 335, 349-350 [11 L.Ed.2d 370, 381-382, 84 S.Ct. 363].)

■ Here plaintiff has alleged that the union representatives acted "in an arbitrary, wilful and bad faith manner," "wilfully, in bad faith and with wanton disregard for the rights of plaintiff," and that their conduct was "arbitrary and unreasonable and was unfaithful to the plain and unambiguous terms of the collective bargaining agreement."

Respondents argue that although plaintiff invoked the necessary language from *Vaca* v. *Sipes, supra,* he pleaded only conclusions without specific facts to support them. (*Gutierrez* v. *Gaffers and Sattler Corp.,* 4 Cal.App. 3d 731, 736-737 [84 Cal.Rptr. 571].) We hold that under the circumstances the pleading was sufficient.

On February 24, 1970, the same day *Gutierrez* was filed, the United States Supreme Court decided *Czosek* v. *O'Mara,* 397 U.S. 25 [25 L.Ed.2d 21, 90 S.Ct. 770]. In that case railroad workers alleged that they had been wrongfully discharged and that the union defendants had been "guilty of gross nonfeasance and hostile discrimination" in arbitrarily and capriciously refusing to process their claims. The federal district court dismissed the complaint in part for failure adequately to allege a breach of duty by the union. The Court of Appeals reversed, and the Supreme Court affirmed the Court of Appeals. The Supreme Court directed that complaints in cases such as these be liberally construed. It said: "Although the complaint was not as specific with regard to union discrimination as might have been desirable, we deem the complaint against the union sufficient to survive a motion to dismiss. As the Court of Appeals indicated, 'where the courts

are called upon to fulfill their role as the primary guardians of the duty of fair representation,' complaints should be construed to avoid dismissals and the plaintiff at the very least 'should be given the opportunity to file supplemental pleadings unless it appears "beyond doubt" that he cannot state a good cause of action.' " (397 U.S. at p. 27 [25 L.Ed.2d at p. 24].)

Here, as in *Retana* v. *Apartment, Motel, Hotel & El. Op. U., Loc. No. 14* (9th Cir. 1972) 453 F.2d 1018, 1023, "Measured by these generous standards, the allegations of the present complaint relating to breach of the union's duty of fair representation were adequate to withstand a motion to dismiss."

First, plaintiff did allege certain statements made by union officials prior to his grievance hearing which tended to indicate that the result was a foregone conclusion. Although, as discussed below, the charge that Flaherty decided prior to the hearing that plaintiff's interpretation of the agreement was without merit, would not necessarily indicate that the decision was arbitrary or not in good faith, it was a specific factual allegation consistent with arbitrary discrimination and unfair conduct.

Second, we have held that plaintiff might be able to introduce extrinsic evidence supporting his interpretation of the contract.[8] If the union's contrary position was a reasonable interpretation of the contract, even if mistaken, and was taken in good faith, plaintiff would of course have no cause of action. But, since only the pleading stage has been reached, it is conceivable plaintiff's extrinsic evidence of the intent of the provision could be so strong as to support an inference of arbitrary discrimination or bad faith on the part of the union in taking a patently contrary position. (See *Local 13, Int. Longshoremen's & W. U.* v. *Pacific Mar. Ass'n* (9th Cir. 1971) 441 F.2d 1061, 1067-1068 fn. 10, cert. den., 404 U.S. 1016 [30 L.Ed.2d 664, 92 S.Ct. 67].)

---

[8]Respondents' reliance on the proposition that a contract of employment which is indefinite as to duration is terminable at will unless based on some consideration other than the services to be performed under the contract (*Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union, supra,* 69 Cal.2d 713, 727 fn. 12), is misplaced. First, to the extent the complaint relies upon the collective bargaining agreement which is alleged to be effective from February 1, 1969, to January 31, 1973, the agreement is not indefinite as to duration. Second, the above principle is only a rule of construction, subject to introduction of other evidence of the parties' intent. (*Drzewiecki* v. *H & R Block, Inc.,* 24 Cal.App.3d 695, 702-704 [101 Cal. Rptr. 169]; accord, *Ruinello* v. *Murray,* 36 Cal.2d 687, 690 [227 P.2d 251]; *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union, supra,* at p. 727.) Third, since the contract clause in question was negotiated by the union in the context of collective bargaining, there may be elements of consideration other than the services to be performed by the employee. (See *Posner* v. *Grunwald-Marx, Inc.,* 56 Cal.2d 169, 189-190 [14 Cal.Rptr. 297, 363 P.2d 313].)

Thus, although the complaint contains few particulars as to why the union arbitrarily discriminated against plaintiff, we think that in view of the policy of liberally construing such complaints and of the desirability of determining plaintiff's closely connected causes against the union and the employer in the same proceeding,[9] it is sufficient. To paraphrase *Maxwell v. City of Santa Rosa*, 53 Cal.2d 274, 280 [1 Cal.Rptr. 334, 347 P.2d 678],[10] ". . . we are not here dealing with the proof of plaintiffs' allegations. It is not for us to speculate how plaintiff expects to prove the frame of mind" of the union representatives. Our task is only to decide whether plaintiff adequately pleaded a cause of action, and we hold that he did.

## GRIEVANCE PROCEDURES

■ In his second and fifth causes of action plaintiff alleges that the grievance procedures conducted herein were invalid and illegal in that (a) the union was obligated to take plaintiff's side of the dispute; (b) Flaherty should have been disqualified to sit on the grievance committee since he had participated in the January 19 meeting at which the union apparently acquiesced in MGM's interpretation of paragraph 56; (c) the hearing was not fair because Flaherty had prejudged the matter; and (d) the decision was arbitrary, being unfaithful to the plain and unambiguous terms of the collective bargaining agreement. Ground (d) is merely repetitive of the other aspects of plaintiff's case. As to the first three contentions, our discussion begins with the premise that we should not introduce undesirable rigidity into beneficial machinery for easing labor-management strife.

It is neither required nor desirable that the union invariably take the side of the particular worker whose grievance is being considered. The union's duty is to represent all of its members fairly and in good faith, and inevitably this sometimes requires taking a position contrary to that of an individual member. As the Supreme Court stated in *Humphrey* v. *Moore, supra,* 375 U.S. 335, 349 [11 L.Ed.2d 370, 381], quoting *Ford Motor Co.* v. *Huffman,* 345 U.S. 330, 338 [97 L.Ed. 1048, 1058, 73 S.Ct. 681],

---

[9] See *Vaca* v. *Sipes, supra,* 386 U.S. 171, 187-188 [17 L.Ed.2d 842, 856-857]; *Brady* v. *Trans World Airlines, Inc.* (3d Cir. 1968) 401 F.2d 87, 94-95, cert. den., 393 U.S. 1048 [21 L.Ed.2d 691, 89 S.Ct. 681].

[10] In *Maxwell,* landowners claimed that the city had arbitrarily and fraudulently assessed their property for street improvements based upon a predetermined plan to limit costs to the city without regard to benefit to the landowners, and that the city council acted in bad faith, conducting sham hearings with fraudulent intent to arrive at a predetermined result. Judgment of dismissal after sustaining of a demurrer to the third amended complaint was reversed.

" 'Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.' "

If the union were compelled always to be the grievant's advocate, few grievances could be settled short of arbitration. The Supreme Court said in *Vaca* v. *Sipes, supra,* 386 U.S. at pages 191-192 [17 L.Ed.2d at pages 858-859]: ". . . In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures. Moreover, both sides are assured that similar complaints will be treated consistently, and major problem areas in the interpretation of the collective bargaining contract can be isolated and perhaps resolved. And finally, the settlement process furthers the interest of the union as statutory agent and as co-author of the bargaining agreement in representing the employees in the enforcement of that agreement. . . . [¶] If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully. . . . It can well be doubted whether the parties to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures of the kind encouraged by L. M. R. A. § 203(d), *supra,* if their power to settle the majority of grievances short of the costlier and more time-consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration. Nor do we see substantial danger to the interests of the individual employee if his statutory agent is given the contractual power honestly and in good faith to settle grievances short of arbitration. For these reasons, we conclude that a union does not breach its duty of fair representation, and thereby open up a suit by the employee

for breach of contract, merely because it settled the grievance short of arbitration." (Fn. omitted.)

Thus there is nothing inherently wrong with the fact that Flaherty did not side with appellant at the step two grievance proceeding. Nor did the mere fact that Flaherty participated in a meeting with the producer and concluded that paragraph 56 did not apply to appellant's situation disqualify him. It may very well be that Flaherty's interpretation of the contract was entirely reasonable, honest and taken in good faith. If so, plaintiff has no cause of action against him or the union for breach of the duty of fair representation, and the grievance hearing is not rendered invalid by Flaherty's participation. That Flaherty may have been convinced his interpretation was correct even before he entered the hearing, and that he informed plaintiff of this fact, would not invalidate his good faith decision.[11]

It is only if Flaherty's decision at the grievance hearing was arrived at in bad faith, showing hostile discrimination against plaintiff or an arbitrary decision patently contrary to the collective bargaining agreement, that plaintiff has any cause to upset, through this court action, a decision of the grievance committee. (See *Vaca* v. *Sipes, supra,* 386 U.S. at pp. 185-186 [17 L.Ed.2d at pp. 854-855].) Here, however, plaintiff's fifth cause of action incorporates the bad faith allegations in the complaint and attacks the grievance procedures "as applied to plaintiff." The request for declaratory relief should therefore be determined along with the other causes of action. (See *Greenberg* v. *Hollywood Turf Club,* 7 Cal.App.3d 968, 979 [86 Cal.Rptr. 885].)

### EXHAUSTION OF REMEDIES

■ Respondent IATSE argues that plaintiff failed adequately to allege the facts showing that he exhausted or was excused from exhausting grievance procedures established by the collective bargaining agreement. (See *Vaca* v. *Sipes, supra,* 386 U.S. at p. 184 [17 L.Ed.2d at p. 854].) This is

---

[11]Appellant's reliance on *Brady* v. *Trans World Airlines, Inc.* (3d Cir. 1968) *supra,* 401 F.2d 87, 93, for the proposition that Flaherty could not sit on the grievance committee, is misplaced. In that case the plaintiff had refused to pay an increase in his union dues which he felt had been imposed contrary to union bylaws. The union then procured his discharge from employment for failure to pay his dues. The court simply held that the case was basically a dispute between the employee and his union over internal union matters and only incidentally involved interpretation of the collective bargaining agreement, and thus the adjustment board composed of union and employer representatives had no jurisdiction to hear such dispute. The court's comments about the inappropriateness of the union's role in the adjustment board proceedings thus arose in an entirely different context.

without merit. Plaintiff alleged that he invoked step two of the grievance procedure. A decision was rendered by the step two grievance committee. Plaintiff requested arbitration (step three) but was refused. Respondent IATSE points to no other procedure which plaintiff could have invoked. Plaintiff alleged in detail the union's wrongful handling of his grievance.[12]

## CONCLUSION

In summary we hold for the reasons stated above:

As to the first and second causes of action, plaintiff sufficiently alleged wilful, arbitrary, bad faith conduct by the union and its representatives to state a cause of action and to establish the trial court's jurisdiction.

As to the third and fourth causes of action, the complaint sufficiently alleged breach of the collective bargaining agreement to state a cause of action and to establish the jurisdiction of the court.

The fifth cause of action, for declaratory relief adjudging the grievance procedures invalid "as applied to plaintiff," is dependent on the other causes of action, and should proceed with them.

The judgments are reversed. The cause is remanded to the superior court for further proceedings consistent with this opinion.

Kaus, P. J., and Hastings, J., concurred.

---

[12]In *Vaca* v. *Sipes, supra,* at pages 184-186 [17 L.Ed.2d at pages 854-855], the court indicated that the employee can defend a charge that he has failed to exhaust the remedies specified in the collective bargaining agreement, by showing that the union wrongfully refused to process his grievance.