[Civ. No. 48940. Second Dist., Div. Five. June 14, 1977.]

KEITH E. JOHNSON, Plaintiff and Appellant, v.
HYDRAULIC RESEARCH AND MANUFACTURING
COMPANY et al., Defendants and Respondents.

## Counsel

Arthur D. Cohen for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Jack H. Halgren and Peter J. Thurston for Defendants and Respondents.

## Opinion

**ASHBY, J.**—Plaintiff Johnson brought this action alleging various causes of action against his former employer, defendant Hydraulic Research and Manufacturing Company, and the company's manager of compensation and employee relations, defendant Cantreau. The trial court granted defendants' motion for summary judgment on the ground that the action was barred by plaintiff's failure to exhaust the grievance

and arbitration remedies provided in the collective bargaining agreement governing the employees. Plaintiff appeals.

The factual background of the dispute is that on August 16, 1974, plaintiff, who was employed as a shop helper, was found vomiting and in acute distress in the company men's room. He was referred to Dr. Miller of the San Fernando Medical Clinic. Dr. Miller subsequently reported to the company that blood tests indicated plaintiff had an abnormally high level of secobarbital and amobarbital in the blood. Based on the results of the test and observations by plaintiff's superior that he had appeared shaky and uncoordinated while performing certain tasks,[1] the company terminated plaintiff. Pursuant to the collective bargaining agreement, plaintiff filed a grievance, which was resolved against him. He then requested arbitration, but subsequently the arbitration was abandoned.

Plaintiff then filed this action in superior court, alleging three causes of action against defendants.[2] Plaintiff's three alleged causes of action are: (1) conspiracy to violate plaintiff's rights under Business and Professions Code section 2379;[3] (2) wrongful interference with plaintiff's contractual relations with the doctor; and (3) defamation. The pleadings and affidavits and papers introduced on the motion for summary judgment show that plaintiff contends he was a private patient of Dr. Miller's and that the doctor had no right to disclose to the company the results of the blood test. Plaintiff also contends he was taking drugs pursuant to a prescription, was able to perform his duties, and was unjustly discharged. On the other hand, the company contends that the examination was conducted pursuant to paragraph 5.31 of the collective bargaining

---

[1]Plaintiff's duties included working on and near metal cutting and forming machines and using acids.

[2]Plaintiff also alleged five causes of action against Dr. Miller and other physicians, but they are not involved in this appeal.

[3]Business and Professions Code section 2379, relating to unprofessional conduct by physicians and surgeons, provides: "The willful betraying of a professional secret constitutes unprofessional conduct within the meaning of this chapter. Neither this section nor any other provision of law making communication between a physician and surgeon, or podiatrist, and his patient a privileged communication shall apply to investigations or proceedings conducted under this act. The board and examining committee, its employees, agents and representatives must keep in confidence during the course of investigations under this act, the names of any patients whose records are reviewed and may not disclose or reveal such names unless and until proceedings are instituted. The board's authority to examine records of patients in the office of a physician and surgeon is limited to records of patients who have complained to the board about the *particular* physician and surgeon or podiatrist. Waiver of privilege shall not apply to investigations under Section 2417."

agreement (authorizing the company to require an employee to submit to a medical examination to determine if the employee meets the company's requirements for safe and efficient continued employment) and that plaintiff was properly discharged.

## DISCUSSION

The basic dispute in this case concerns whether the company had the right to the results of the medical examination and whether plaintiff was properly discharged for drug use which interfered with his job duties. As will be seen, the collective bargaining agreement governing the employees provided specific, exclusive grievance and arbitration procedures to resolve disputes of this nature. Plaintiff put into motion the grievance and arbitration procedures, but did not pursue them to a final conclusion. Because the procedures established in the collective bargaining agreement were intended to be exclusive, we conclude that plaintiff's failure to exhaust those procedures precludes the present attempt to resort to the courts instead.

It is well established that a party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such contract must exhaust the internal remedies before resorting to the courts in the absence of facts excusing such exhaustion. (*Cone* v. *Union Oil Co.*, 129 Cal.App.2d 558, 563-564 [277 P.2d 464]; *Terrell* v. *Local Lodge 758 etc. Machinists*, 141 Cal.App.2d 17, 21-22 [296 P.2d 100]; *Hagin* v. *Pacific Gas & Elec. Co.*, 152 Cal.App.2d 93, 96 [312 P.2d 356]; *Stroman* v. *Atchison, T. & S. F. Ry. Co.*, 161 Cal.App.2d 151, 166 [326 P.2d 155]; *Thornton* v. *Victor Meat Co.*, 260 Cal.App.2d 452, 467 [67 Cal.Rptr. 887]; *Gutierrez* v. *Gaffers and Sattler Corp.*, 4 Cal.App.3d 731, 735 [84 Cal.Rptr. 571]; *Charles J. Rounds Co.* v. *Joint Council of Teamsters No. 42*, 4 Cal.3d 888, 894-895 [95 Cal.Rptr. 53, 484 P.2d 1397].)

As explained in *Cone* v. *Union Oil Co.*, *supra*, at page 564, "[t]his rule, which is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts [citation], is based on a practical approach to the myriad problems, complaints and grievances that arise under a collective bargaining agreement. It makes possible the settlement of such matters by a simple, expeditious and inexpensive procedure, and by persons who, generally, are intimately familiar therewith. [Citation.] The use of these internal remedies for the

adjustment of grievances is designed not only to promote settlement thereof but also to foster more harmonious employee-employer relations. [Citation.] Such procedures, which have been worked out and adopted by the parties themselves, must be pursued to their conclusion before judicial action may be instituted unless circumstances exist which would excuse the failure to follow through with the contract remedies."

We of course understand plaintiff's desire to remedy the breach of what he claims was a private doctor-patient relationship, the loss of his job, and the injury to his reputation which results from the employer's position as to the reason for his discharge. But the subject matter of the dispute is such that the collective bargaining agreement provided a method of resolving it. Plaintiff should have followed through with those procedures. "A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. . . . [I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement." (*Republic Steel* v. *Maddox*, 379 U.S. 650, 653 [13 L.Ed.2d 580, 583, 85 S.Ct. 614].) The very fact that the agreement provides the employee a grievance and arbitration remedy for unjust discharge necessarily entails that the company's reasons for the discharge will be disclosed.

The collective bargaining agreement in this case contains the following pertinent clauses:

"3.51 The grievance and arbitration procedure provided for in this Article shall constitute the sole and exclusive method of adjustment and settlement between the parties of any and all grievances as herein defined.

"3.11 A grievance is hereby defined as any written claim or dispute between the Company and the Union or between the Company and an employee concerning wages, hours or working conditions or the interpretation or application of a specific clause or clauses of this Agreement.

"3.41 [Following a three-step grievance procedure, in] the event of a failure to accomplish a settlement of a grievance involving the interpretation or application of a specific clause or clauses of this Agreement,

such grievance may be submitted to Arbitration by written notice to this effect pursuant to Paragraph 3.32 of this Article.

"3.44 The decision of the arbitrator, subject to any remedies of the parties at law, shall be final and binding on the parties.

"1.72 The Company may discipline or discharge employees for a justifiable reason.

"5.31 At any time during his employment, an employee may be required by the Company, at its option and expense, to submit to a medical examination to determine if the employee meets the Company's requirements for safe and efficient employment, continued employment, or continued assignment to a particular job classification."

We hold that the dispute plaintiff is attempting to litigate in the present action is clearly one which concerns "the interpretation or application of a specific clause or clauses of" the collective bargaining agreement (¶ 3.11) or is a dispute "within the scope of such contract" (*Cone* v. *Union Oil Co., supra*) and that therefore plaintiff's failure to exhaust the arbitration procedure specified in the agreement precludes the instant action.

■ Plaintiff emphasizes that paragraph 3.41 of the agreement provides in the event of a failure to accomplish settlement of a grievance, such grievance "may" be submitted to arbitration. The use of the term "may" merely indicates that a party has an option either to accept the result of step three of the grievance procedure or to request arbitration. Particularly in light of paragraph 3.51 referring to the grievance and arbitration procedures as the "sole and exclusive" method of adjustment of grievances, the use of the word "may" does not mean that a party may choose to skip the arbitration process and litigate in court instead. (*Hagin* v. *Pacific Gas & Elec. Co., supra,* 152 Cal.App.2d 93, 96; *Republic Steel* v. *Maddox, supra,* 379 U.S. at p. 658 [13 L.Ed.2d at p. 586].)

■ Plaintiff offers no excuse for his abandonment of the arbitration remedy. Defendant Cantreau's affidavit states that he was informed by plaintiff's union representative that the proceedings "had been abandoned as without merit."[4] Plaintiff contends that a notation on the

---

[1]The union is not a defendant, and no claim is made that the union representative acted in bad faith. (See *Shaw* v. *Metro-Goldwyn-Mayer, Inc.,* 37 Cal.App.3d 587, 602-604 [113 Cal.Rptr. 617].)

grievance form stated: "Grievance withdrawn without prejudice or precedent." This ambiguous statement on the grievance form does not constitute a showing of excuse. (Cf. *Cone* v. *Union Oil Co., supra,* at p. 564, with *Stroman* v. *Atchison, T. & S. F. Ry. Co., supra,* 161 Cal.App.2d at p. 166.)

Plaintiff's first two causes of action relate directly to the medical examination which defendants contend was properly conducted, and the results properly disclosed, pursuant to paragraph 5.31 of the collective bargaining agreement. ■ Plaintiff contends that since *he* is not relying upon the agreement, and its terms are raised as a matter of *defense,* the exhaustion rule should not apply. This contention is without merit. If the subject matter of the dispute falls within the grievance and arbitration procedures of the agreement, a plaintiff may not avoid those procedures merely by artfully pleading his complaint as a tort which omits reference to the agreement. (Cf. *Griggs* v. *Transocean Air Lines,* 176 Cal.App.2d 843, 845, 846 [1 Cal.Rptr. 803]; *Hills Trans. Co.* v. *Southwest Forest Industries, Inc.,* 266 Cal.App.2d 702, 712-713 [72 Cal.Rptr. 441]; *Bollotin* v. *Cal. State Personnel Board,* 131 Cal.App.2d 197, 202-203 [280 P.2d 509]; *Hicks* v. *Corbett,* 130 Cal.App.2d 87, 89 [278 P.2d 77].)

■ Plaintiff's argument that summary judgment should not have been granted, because there was a triable issue of fact as to *whether* the examination *was* conducted pursuant to paragraph 5.31,[5] also misses the mark. The trial court did not purport to resolve that factual issue, which went directly to the merits of the action. The point is that the uncontradicted evidence showed that the dispute was *about* the applicability of paragraph 5.31 and therefore the dispute should have been resolved pursuant to the procedures in the collective bargaining agreement. If plaintiff's argument were accepted, the trial court would have

[5] The declarations in support of defendants' motion for summary judgment tended to show that company officials referred plaintiff to the medical clinic for examination to determine whether it was safe for plaintiff to work. To counter these. plaintiff declared that he was told by his supervisor he would have to pay for the examination himself; that plaintiff did pay the doctor immediately after the examination; that he objected when Dr. Miller told him the following week that he was going to give the information to the company and that plaintiff was going to be reimbursed; and that the company never informed plaintiff until after the grievance proceedings that the company was relying on paragraph 5.31. Plaintiff also introduced admissions by Cantreau that he did not remember telling plaintiff, prior to the examination. that he was required to take it, and by the company nurse that she had erred in telling the doctor's receptionist that plaintiff should pay for the examination.

been required to try the merits of the defense before determining that the dispute did not belong in court in the first place.

 If plaintiff is attempting to argue that he had no reason to know that paragraph 5.31 was involved, and that therefore he was excused from exhausting the grievance and arbitration procedures, that contention also fails. Plaintiff obviously did believe that his dispute with his employer was arbitrable, because he initiated and completed the grievance procedures, and initiated the arbitration procedure, subsequently abandoning it. Plaintiff admitted that the week following the examination Dr. Miller told him that he was giving the results to the company and that plaintiff would be reimbursed for his payment for the examination. Plaintiff and his union representative must be presumed to know the terms of the collective bargaining agreement, including paragraph 5.31.

Plaintiff next contends that at least the cause of action for defamation did not concern the collective bargaining agreement. In that cause of action plaintiff alleged that Cantreau and unnamed Doe defendants uttered statements to Hydraulic's employees and other persons that plaintiff was involved in drug abuse. Such statements are alleged to be false and made with malice "with the intent and design to injure, disgrace and defame Plaintiff and to bring him into public disregard . . . to cause the public to hold him in contempt and ridicule," with resulting damage to plaintiff's reputation.

Defendants admitted that through his secretary Cantreau communicated to the Department of Employment Development that plaintiff was discharged for being under the influence of drugs and drug abuse. Cantreau further admitted that he discussed that charge with plaintiff's supervisors, Cantreau's superior, the company nurse, the company president, Dr. Miller, and, at the grievance hearing, with plaintiff's union representative and the senior steward.[6]

All the alleged defamatory statements involved the reason for plaintiff's discharge, which was based upon the results of the medical examination. Paragraph 1.72 of the collective bargaining agreement permitted the company to discharge employees for a justifiable reason. When he filed his grievance, plaintiff alleged he was unjustly discharged.

---

[6]Cantreau was clearly acting in his capacity as Hydraulic's manager of employee relations. Plaintiff's argument that Cantreau individually may not rely on the arbitration clauses of the contract is without merit.

All of Cantreau's utterances were to persons who were directly interested in the reason for plaintiff's discharge.[7] Under all these circumstances plaintiff's abandonment of the arbitration should preclude his attempt to maintain this defamation action.

A similar problem was involved in *Joftes* v. *Kaufman* (D.D.C. 1971) 324 F.Supp. 660, 662-664. There it was held that an employee who failed to pursue the grievance machinery for an alleged unjustified discharge could not maintain a libel action against the officials who communicated to interested persons the reasons for the plaintiff's discharge. It was pointed out that pursuit of the grievance procedures might have resulted in relief and vindication for the plaintiff, and that the policy of encouraging expeditious procedures for resolution of labor disputes would be defeated if the plaintiff could instead proceed by way of a suit for libel. (*Id.*, at p. 664.) Here, too, plaintiff's basic complaint is unjustified discharge, and he should not be permitted to maintain this action after abandoning the arbitration machinery which could have resolved the problem.[8]

The instant case should be distinguished from one in which the employee pursues the arbitration to a final, favorable outcome, resulting

---

[7]Defendants make a strong argument that even aside from plaintiff's abandonment of the arbitration the cause of action for defamation is without merit because the statements were privileged. Thus, Cantreau's statement to the Department of Employment Development was absolutely privileged because it was made in connection with official proceedings. (Civ. Code, § 47, subd. 2; see *King* v. *Borges*, 28 Cal.App.3d 27, 31-32 [104 Cal.Rptr. 414]; *Ascherman* v. *Natanson*, 23 Cal.App.3d 861, 865 [100 Cal.Rptr. 656]; *Bernstein* v. *Alameda etc. Med. Assn.*, 139 Cal.App.2d 241, 245-246 [293 P.2d 862].) His statements to other persons were qualifiedly privileged as communications to interested persons. (Civ. Code, § 47, subd. 3; see *Deaile* v. *General Telephone Co. of California*, 40 Cal.App.3d 841, 846-847 [115 Cal.Rptr. 582].) Statements made in connection with the grievance and arbitration proceedings were either absolutely or qualifiedly privileged. (Compare *General Motors Corporation* v. *Mendicki* (10th Cir. 1966) 367 F.2d 66, 70-72, with *Bird* v. *Meadow Gold Products Corp.* (1969) 60 Misc.2d 212 [302 N.Y.S.2d 701, 704-705]; see Annot., 60 A.L.R.3d 1041.) Plaintiff introduced no evidence, in opposition to the motion for summary judgment, which would tend to show that Cantreau knew the statements were false or had no probable cause to believe in their truth, or that he acted out of ill will or primarily from some motivation other than the purpose for which the privilege is justified. (See *Locke* v. *Mitchell*, 7 Cal.2d 599, 602-603 [61 P.2d 922]; *Lesperance* v. *North American Aviation, Inc.*, 217 Cal.App.2d 336, 340 [31 Cal.Rptr. 873]; *Biggins* v. *Hanson*, 252 Cal.App.2d 16, 20 [59 Cal.Rptr. 897]; *Noonan* v. *Rousselot*, 239 Cal.App.2d 447, 454 [48 Cal.Rptr. 817]; *Everett* v. *California Teachers Assn.*, 208 Cal.App.2d 291, 294-295 [25 Cal.Rptr. 120].) However, plaintiff's abandonment of the collective bargaining machinery makes it unnecessary to reach the issue of privilege.

[8]Although plaintiff contends the defamations were committed after his discharge, this does not mean, as he argues, that the grievance machinery was irrelevant or inapplicable to plaintiff.

in reinstatement, and thereafter sues for defamation to recover damages for injury to his reputation, a remedy which the arbitrator presumably would be unable to award. (See, e.g., *DeLuca* v. *Reader* (1974) 227 Pa.Super. 392 [323 A.2d 309].) In the one case the employee has adhered to the collective bargaining machinery to resolve the dispute; in the other he has attempted to bypass it.

As a separate contention, plaintiff also points to the trial court's minute order granting the motion for summary judgment which states: "The collective bargaining agreement provides the first and exclusive remedy *including a jurisdictional determination of its own jurisdiction.*" (Italics added.) Plaintiff contends that the italicized portion of this statement was erroneous because normally the decision as to what issues are arbitrable is for the court to determine, in the absence of evidence the parties intended to confer upon the arbiter the unusual power of determining his own jurisdiction. (See *McCarroll* v. *L. A. County etc. Carpenters,* 49 Cal.2d 45, 65-66 [315 P.2d 322]; *Pari-Mutuel etc. Guild* v. *L.A. Turf Club,* 169 Cal.App.2d 571, 578 [337 P.2d 575]; *Thornton* v. *Victor Meat Co., supra,* 260 Cal.App.2d 452, 467, fn. 11.) Assuming the validity of this argument, the trial court's inclusion of the italicized statement in the minute order would in no way require reversal of the judgment, since we hold that the dispute in this case was a matter required to be pursued through the grievance and arbitration machinery in the agreement.

Although the notice of appeal purports to be from the "order for summary judgment," we treat the appeal as from the final judgment. (*Zetterberg* v. *State Dept. of Public Health,* 43 Cal.App.3d 657, 665 [118 Cal.Rptr. 100].)

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied July 14, 1977.