[Civ. No. 61989. Second Dist., Div. Three. Sept. 27, 1982.]

ATTIS E. LOGAN, Plaintiff and Appellant, v.
SOUTHERN CALIFORNIA RAPID TRANSIT DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

Joseph Posner and Contos & Bunch for Plaintiff and Appellant.

Suzanne B. Gifford, Kessler & Drasin, Gary Kessler and Lawrence Drasin for Defendants and Respondents.

**OPINION**

**KLEIN, P. J.—**

### STATEMENT OF FACTS

Plaintiff and appellant Attis E. Logan (Logan) appeals from a judgment of dismissal after demurrers by defendants and respondents

Southern California Rapid Transit District (RTD) and United Transportation Union (UTU) were sustained.

For reasons hereinafter discussed, we affirm the judgment.

PROCEDURAL AND FACTUAL BACKGROUND[1]

On July 19, 1978, the date of the incident involved, Logan was employed by the RTD as a bus driver. He was also a member in good standing of the UTU. On that date while driving a bus, he allegedly was attacked by an intoxicated female passenger who weighed in excess of 200 pounds. Logan attempted to defend himself and his bus, and to escape. During the altercation, the female fell from the bus onto the pavement sustaining minor injury. She never made any claim against the RTD. Part of the incident was witnessed by a security guard at a business in the locale of the incident. Logan reported the matter promptly to the RTD.

On July 25, 1978, the RTD discharged Logan, allegedly for an infraction of the rules regarding disputes with passengers, which discharge he reported to the UTU. However, in a subsequent report, the RTD indicated he had been fired for wilful misconduct, implying he was the aggressor in the altercation.

A hearing was held to consider the circumstances of his discharge. The UTU on Logan's behalf sent a representative who was unfamiliar with all the facts, and who failed to call the security guard as a witness. The only evidence allegedly available at the hearing was a partial statement of the security guard taken by an RTD investigator.

Logan persisted in attempting to get his job back, including requesting the UTU to compel arbitration with the RTD. The UTU was the only party under the union agreement entitled to demand arbitration. He appealed to the RTD and the UTU, while suffering great financial pressure and distress. He did get unemployment benefits over RTD's objection. When Logan appealed to the national president of the UTU, he was informed he was suspended for nonpayment of dues as of September 1978.

---

[1]The facts are taken from the allegations set forth in Logan's second amended complaint.

In June 1980, Logan filed his second amended complaint against the RTD for: "1. Violation of Constitutional Rights; 2. Intentional Infliction of Emotional Distress; 3. Breach of Collective Bargaining Agreement; 5. Breach of Covenant of Good Faith and Fair Dealing." As against the UTU, Logan alleged "4. Breach of Duty of Fair Representation; 2. Intentional Infliction of Emotional Distress."

Both RTD and the UTU demurred, alleging that Logan's proper remedy was a writ of mandate under Code of Civil Procedure section 1094.5,[2] a prerequisite to a suit for damages. Both entities also demurred on the ground that Logan failed to state a cause of action.

The trial court sustained the demurrers with leave to amend. The trial court held that Logan did not have a remedy for damages, but only for a writ of mandate from the RTD and UTU's alleged conduct. Logan did not amend his complaint and chose instead to appeal.

## CONTENTIONS

Logan contends his second amended complaint adequately sets forth several causes of action, which contention is controverted by RTD and UTU.

## DISCUSSION

### A. *Logan's Claims Against the RTD.*

■ 1. *Failure to Seek Administrative Review Pursuant to Section 1094.5 Precludes Logan's Suits for Tort and Contract Damages Against the RTD.*

---

[2]Code of Civil Procedure section 1094.5 states in pertinent part: "(a) Where the writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer, the case shall be heard by the court sitting without a jury. All or part of the record of the proceedings before the inferior tribunal, corporation, board or officer may be filed with the petition, may be filed with respondent's points and authorities or may be ordered to be filed by the court. . . . [¶] (b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."

All code citations are to the Code of Civil Procedure unless otherwise indicated.

The courts have repeatedly held that administrative writ of mandate provided for in section 1094.5 is the appropriate remedy for the purpose of inquiring into the validity of any final administrative agency decision made as the result of a proceeding which by law requires a hearing, evidence to be considered, and a discretionary determination of fact vested in an inferior tribunal. (*Sierra Club* v. *City of Hayward* (1981) 28 Cal.3d 840, 849 [171 Cal.Rptr. 619, 623 P.2d 180]; *Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 637 [234 P.2d 981].)

Here, Logan as an employee of a state funded agency had a hearing to review his discharge at which his termination was upheld. Based on his belief that there was a denial of due process at the hearing, Logan filed various tort and contract claims for damages as well as a title 42 United States Code section 1983 suit.[3]

The law is settled on the propriety of filing a suit for damages before such a plaintiff has requested a section 1094.5 writ of review. In *Holder* v. *California Paralyzed Veterans Assn.* (1980) 114 Cal.App.3d 155, 157-158 [170 Cal.Rptr. 155], plaintiff, ousted from membership in the association, alleged that procedural defects in the hearing held by the association had deprived him of certain fundamental due process rights, and sought damages for intentional and negligent infliction of emotional distress. The defendant's demurrer had been sustained. (*Id.*, at p. 159.) The court held that a due process claim makes even more appropriate the uniform practice of judicial review of quasi-judicial decisions. (*Holder* v. *California Paralyzed Veterans Assn., supra*, 114 Cal.App.3d at pp. 163-164.)

Logan's case is very similar in that he is also asking for damages for intentional infliction of emotional distress as well as other relief.

Although Logan's third and fifth counts sound in contract, any cause of action that involves the substance of the hearing held by the RTD, whether such cause of action sounds in tort or contract, must be tested under a section 1094.5 writ. (*Interior Systems, Inc.* v. *Del E. Webb Corp.* (1981) 121 Cal.App.3d 312, 319-320 [175 Cal.Rptr. 301].) A

---

[3]Title 42 United States Code section 1983 (hereinafter referred to as USC sec. 1983) states in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

plaintiff may not ignore the administrative decision by filing a separate action at law. (*Id.*, at p. 320.)

The bare allegation in Logan's complaint that he "has exhausted his administrative remedies" does not relieve him of the burden of doing so and properly pleading the results thereof. Logan's actions for damages against the RTD fail because he did not apply for a judicial review of the decision and findings of the administrative agency here involved pursuant to section 1094.5, which application amounts to a condition precedent to his filing a complaint for damages.

2. *Logan's Pleadings Against the RTD Fail to Meet the Requirements for a USC Sec. 1983 Claim.*

■ Initially, we determine that a USC sec. 1983 action can be brought in state court because absent a grant of exclusive jurisdiction, state courts have concurrent authority to adjudicate federally created causes of action. (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 837 [129 Cal.Rptr. 453, 548 P.2d 1125].)

■ Logan is correct in his contention that a plaintiff need not exhaust state mandated judicial or administrative remedies before bringing a USC sec. 1983 claim. (*McNeese* v. *Board of Education* (1963) 373 U.S. 668, 671-672 [10 L.Ed.2d 622, 625, 83 S.Ct. 1433].) The United States Supreme Court only recently reaffirmed its ruling of *McNeese* and its progeny. (*Patsy* v. *Board of Regents of the State of Florida* (1982) 457 U.S. 496, 500-501, 512 [73 L.Ed.2d 172, 177-178, 185, 102 S.Ct. 2557].) The court grounded its decision on the legislative history and the congressional intent of the Civil Rights of Institutionalized Persons Act, 42 United States Code section 1997, as well as USC sec. 1983. (*Id.*, at pp. 502-513, 73 L.Ed.2d at pp. 179-185.)

California in turn has held that the state may not impair federally created rights or impose conditions upon them. (See *Adler* v. *Los Angeles Unified School Dist.* (1979) 98 Cal.App.3d 280, 288 [159 Cal.Rptr. 528]; *Graham* v. *City of Biggs* (1979) 96 Cal.App.3d 250, 255-256 [157 Cal.Rptr. 761]; *Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706, 713 [152 Cal.Rptr. 65].)

■ For Logan to recover under this section however, he must plead that a person deprived him of a right while acting under color of law of any statute, ordinance or regulation, custom, or usage of any state; that

the right of which he was deprived was one secured by the Constitution or the law of the United States; and that his loss of life, liberty or property was a deprivation accomplished without due process of law. (*Parratt* v. *Taylor* (1981) 451 U.S. 527, 535-537 [68 L.Ed.2d 420, 428-430, 101 S.Ct. 1908].) RTD must be shown to be a "person" who if acting under "color of law" would be liable.

a. *Persons acting under color of law.*

█ RTD is a state created agency (Pub. Util. Code, § 30000 et seq.), but it is not a state agency per se. Because it is a public agency rather than a state agency, it is not subject to the Eleventh Amendment which precludes suits against the state or its officials in most circumstances. (*Mt. Healthy City Board of Ed.* v. *Doyle* (1977) 429 U.S. 274, 280 [50 L.Ed.2d 471, 479-480, 97 S.Ct. 568].) █ Therefore RTD as a local governing agency or body may be sued for damages under USC sec. 1983 for any unconstitutional policies, ordinances or regulations. (*Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658, 690 [56 L.Ed.2d 611, 635, 98 S.Ct. 2018].)

b. *The constitutionally protected property right.*

Logan must also show that the right of which he was deprived was a constitutionally protected one. Logan did assert that his continued employment is a protected vested property right.

The courts must look to state law in determining what is a protected right as property interests are not created by the Constitution but rather created and defined by an independent source such as state law. (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 577 [33 L.Ed.2d 548, 560-561, 92 S.Ct. 2701].) The California Supreme Court, relying on United States Supreme Court cases of *Board of Regents* v. *Roth, supra*, and *Perry* v. *Sindermann* (1972) 408 U.S. 593, 602-603 [33 L.Ed.2d 570, 580, 92 S.Ct. 2694], held that a permanent civil service employee has a property interest which is protected by due process. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 206-208 [124 Cal.Rptr. 14, 539 P.2d 774].) This fundamental property right to continued employment has been broadened to include all types of public employees. (*Pipkin* v. *Board of Supervisors* (1978) 82 Cal.App.3d 652, 661-662 [147 Cal.Rptr. 502].)

By these standards Logan as a public employee had a fundamental vested property right in his continued employment which he had enjoyed for three and one-half years at the time of his termination.

c. *Logan failed to plead facts to show a taking without due process.*

Logan must allege more than that the RTD was a public agency which deprived him of a federally protected property right. Since not all deprivations of life, liberty or property are protected by the Fourteenth Amendment, he must also set forth that the taking was *without due process.* (*Parratt* v. *Taylor, supra,* 451 U.S. 527.) We believe that therein, Logan has failed to state a cause of action.

The United States Supreme Court cases discussing the nature of the proceeding required to give an individual "due process" have held that some sort of a hearing is required before an individual can be deprived of his property interest. (*Mathews* v. *Eldridge* (1976) 424 U.S. 319, 333 [47 L.Ed.2d 18, 32, 96 S.Ct. 893].)

If the RTD had discharged Logan without a hearing,[4] Logan might be able to state a cause of action. But Logan's pleading admits a hearing was held with a UTU representative present. Logan argues the legal conclusion that he was not accorded due process, but has not presented ultimate facts as to how his due process rights were violated at the hearing. ██ A party is bound by an admission in his own pleadings, and to withstand a demurrer, a complaint must allege ultimate facts, not evidentiary facts or conclusions of law. (*Krug* v. *Meeham* (1952) 109 Cal.App.2d 274, 277 [240 P.2d 732]; *Razzano* v. *Kent* (1947) 78 Cal.App.2d 254, 259 [177 P.2d 612].)

██ We take further cognizance of "[t]he general rule ... that in the absence of a special statute an administrative agency cannot over objection make findings of fact supported solely by hearsay evidence. (See *Consolidated Edison Co.* v. *National Labor Relations Bd.,* 305 U.S. 197 ...; *Walker* v. *City of San Gabriel,* 20 Cal.2d 879 ...; *Dyment* v. *Board of Medical Examiners,* 93 Cal.App. 65 ....)" (*Steen* v. *Board of Civil Service Commrs.* (1945) 26 Cal.2d 716, 726-727 [160 P.2d 816]; Gov. Code, § 11513, subd. (c).) ██ Here Logan failed to

[4]See *Gomez* v. *Toledo* (1980) 446 U.S. 635, 640 [64 L.Ed.2d 572, 577-578, 100 S.Ct. 1920]. Although this case was grounded on the issue of a public employee's immunity, the court noted that the plaintiff had stated a USC sec. 1983 action when he was terminated from his job as a police officer without a hearing.

allege in his complaint that he was not allowed to testify at the hearing at which inferentially he was present, or if he did testify, what was the substance of that testimony, or to indicate whether his report to the RTD was received into evidence. If either he testified as to the facts of the incident, or his statement was admitted into evidence, he could not allege he was terminated by hearsay evidence alone.

Because Logan elected not to amend, it is presumed he has stated as strong a case as possible. (*Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621, 635 [137 Cal.Rptr. 681]; *Vaughn* v. *Certified Life Ins. Co.* (1965) 238 Cal.App.2d 177, 180 [47 Cal.Rptr. 619].)

Although not a pleading prerequisite for a USC sec. 1983 suit, Logan did not test the validity of the hearing under a section 1094.5 writ and therefore we do not have before us a reviewable record of the hearing. We are limited to a review of the pleadings, and since he has not pleaded sufficient facts to show he was terminated without due process he has failed to state a cause of action under USC sec. 1983.

### B. *Logan's Claims Against the UTU.*

1. *Section 1094.5 Review Was Not a Prerequisite for Causes of Action Alleged Against the UTU, but Logan Did Not State a Cause of Action for Breach of Duty of Fair Representation.*

Count two of Logan's complaint purports to state a cause of action for intentional infliction of emotional distress against the UTU as well as the RTD, and count four alleges a breach of duty of fair representation by the UTU.

In spite of the UTU's contentions, this court finds neither rationale nor case law justifying the application of section 1094.5 prerequisites to stating a cause of action against the union. The UTU argues that under *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162], section 1094.5 applies not only to government agencies but to any agency that is compelled to perform legal duties. *Anton* extends the section 1094.5 writ procedure to certain private agencies based on the theory that a *section 1085 writ of mandate*[5] is available to compel official acts of nongovernmental agen-

---

[5]Insofar as pertinent, section 1085 provides: "It may be issued by any court, . . ., to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . . ."

cies as well as governmental bodies, or officers to compel performance of legal duties.

However, to require a prior administrative writ of review, there must be a showing that the purposes for the writ are present, such as "'... inquiring into the validity of *any* final administrative order or decision made as the result of a proceeding in which *by law* [1] a hearing is required to be given, [2] evidence is required to be taken, and [3] discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer ....' (Code Civ. Proc., § 1094.5, subd. (a); italics added.)" (*Anton v. San Antonio Community Hosp., supra*, 19 Cal.3d at p. 814.) Although the UTU espouses reasons why section 1094.5 should apply to a union, it does not indicate how the three above set forth criteria might be met in this situation.

From both Logan's and the UTU's version, the UTU decided not to take Logan's grievance to arbitration. Logan properly alleged that he exhausted all union remedies open to him personally, and is correct in his assertion that under the collective bargaining agreement, only the UTU could demand arbitration. ▉ Before a union employee who alleges to have been wrongfully discharged can bring suit against his union, the employee must attempt to exhaust internal grievance procedures established by the bargaining agreement. (*Vaca v. Sipes* (1967) 386 U.S. 171, 184 [17 L.Ed.2d 842, 854, 87 S.Ct. 903].)

▉ A union as exclusive bargaining representative for the unit has a statutory duty to fairly represent all its employees. (*Vaca v. Sipes, supra*, 386 U.S. at p. 177 [17 L.Ed.2d at p. 850].) This statutory duty originally applied to cases under section 301 of the Labor Management Relations Act (Act). (29 U.S.C. § 185.) The federal Act does *not* apply to a state employer, a political subdivision, or a public agency, but only to nongovernmental employers engaged in (interstate) commerce. (29 U.S.C. § 185(a) and (b); 29 U.S.C. § 152(2).) However, even though there is no *federal* statutory duty of fair representation, California courts have applied one in situations that are excluded under section 301 of the Labor Management Act. (*Lerma v. D'Arrigo Brothers Co.* (1978) 77 Cal.App.3d 836, 840 [144 Cal.Rptr. 18].)

Since the UTU concedes, and this court agrees that a statutory duty of fair representation exists, the issue becomes what acts constitute

breach of duty of fair representation and whether Logan alleged adequate facts in his complaint.

The Supreme Court in *Vaca* held that an employee can bring a suit against his union for a breach of duty of fair representation if he can show the union wrongfully refused to process his grievance. (*Vaca v. Sipes, supra*, 386 U.S. at pp. 185-186 [17 L.Ed.2d at pp. 854-856].) But a breach of statutory duty of fair representation will be found only when the union's conduct toward a member is arbitrary, discriminatory or in bad faith. (*Id.*, at p. 190 [17 L.Ed.2d at pp. 857-858].) Even though the union is the sole representative of the bargaining unit as it is in Logan's case, an employee has no absolute right to have his grievance taken through the grievance procedure. (*Rosales v. General Motors Corp.* (1978) 78 Cal.App.3d 94, 103 [144 Cal.Rptr. 83].)

California courts have placed a heavy burden on employees attempting to show a breach of the union duty. A plaintiff must show fraud, deceit, dishonest conduct, or discrimination which is intentional, severe and unrelated to a legitimate union objective. (*Shaw v. Metro-Goldwyn-Mayer, Inc.* (1974) 37 Cal.App.3d 587, 600 [113 Cal.Rptr. 617]; *Gutierrez v. Gaffers and Sattler Corp.* (1970) 4 Cal.App.3d 731, 736 [84 Cal.Rptr. 571].)

Logan's averments of UTU's conduct do not present sufficient facts to show the UTU acted in bad faith or that in any way it breached the statutory duty of fair representation. (*Ibid.*) Logan's allegations that the UTU refused to undertake arbitration representing him, failed to advise him of his rights in getting his job back, and prejudiced his case against the RTD fall short of pleading requirements to state a cause of action.

The UTU was within its right not to take Logan's grievance to arbitration. A union's decision not to process a grievance further is not per se a breach of duty of fair representation. (*Vaca v. Sipes, supra*, 386 U.S. at pp. 192-193 [17 L.Ed.2d at pp. 858-859].) From the facts alleged by Logan and the case law requirements, UTU's conduct at the most could be considered mistaken or negligent, but not arbitrary or in bad faith. (*Shaw v. Metro-Goldwyn-Mayer, Inc., supra*, 37 Cal.App.3d at p. 600.)

By the governing standards, Logan failed to state a cause of action for breach of duty of fair representation.

■ *2. Logan Did Not Meet the Burden of Stating a Cause of Action Against the UTU for Intentional Infliction of Emotional Distress.*

Logan is not precluded from stating a cause of action for intentional infliction of emotional distress against the UTU because of failure to file a section 1094.5 writ for the same reason previously discussed. But this count also fails as he has not plead facts upon which such relief can be granted.

The modern rule for stating this cause of action requires an allegation of conduct exceeding that which is usually tolerated by a decent society and of a nature which is expected to cause, and does cause, mental distress. (*Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 946 [160 Cal.Rptr. 141, 603 P.2d 58].)

Such outrageous behavior occurs where a defendant "(1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." (*Agarwal* v. *Johnson, supra*, 25 Cal.3d at p. 946.)

Logan set forth no factual allegations as to what UTU's supposedly outrageous conduct was which caused emotional distress. A complaint must allege ultimate facts, not conclusion of laws. (*Krug* v. *Meehan, supra*, 109 Cal.App.2d at p. 277.) The count is devoid of sufficient substance to withstand a demurrer.

### DISPOSITION

The demurrers were properly sustained and the judgment is affirmed.

Potter, J., and Lui, J., concurred.