Filed 2/11/26  Hill v. City of El Centro CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| IRMA HILL, | D084500 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU003107) |
| CITY OF EL CENTRO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Imperial County, L. Brooks Anderholt, Judge.  Reversed in part and remanded.

Law Offices of Gavril T. Gabriel, Gavril T. Gabriel, Athina Kotsia, Nikolaos Kefallonitis and Sherri Davoodi, for Plaintiff and Appellant.

Gibbs & Fuerst, Michael T. Gibbs; Kahana Feld and Kevin L. Borgen, for Defendant and Respondent City of El Centro.

McCormick, Mitchell & Rasmussen, John P. McCormick, Konrad M. Rasmussen and Brett L. Cirincione, for Defendant and Respondent Patricia Urena.

Until March 2020, Irma Hill worked as a parttime recreation leader at the community center operated by the City of El Centro (the City). At that time, due to the COVID-19 shutdown, the center's parttime employees were told they were being temporarily laid off and that they would later be reinstated without having to submit a job application. By June 2021, the City had fulfilled this promise for all the parttime workers except Hill. Patricia Urena, Hill's supervisor and the person responsible for calling her back to work, said she needed to apply for her old job. But this would be a futile endeavor, Urena indicated, in part because of Hill's age and having been diagnosed with diabetes.

From Hill's perspective, being singled out in this manner capped years of mistreatment by Urena based on ageism, ableism, and other intolerances. As a result, she sued both the City and Urena. Against the City, she asserted claims under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) for discrimination and retaliation in dismissing her and not reinstating and/or hiring her, along with common law claims of wrongful termination and wrongful failure to hire. She also alleged statutory harassment claims against both defendants and a statutory claim against the City for failure to prevent harassment and discrimination. The trial court sustained defendants' demurrers to all of Hill's claims without leave to amend and entered judgment in their favor.

Hill's appeal from the judgment seeks to recover a subset of her claims. Based on our de novo review of the operative complaint, we conclude that Hill has alleged facts corresponding to each element of her statutory claims for age and disability discrimination, retaliation, harassment, and failure to prevent harassment and discrimination. Accordingly, judgment as to those claims, as well as her derivative common law unlawful termination claim,

2

is reversed.  But Hill is ineligible as a matter of law to pursue a common law claim of wrongful failure to hire; thus, we affirm the judgment as to this claim and several others not addressed on appeal.  We also conclude that Hill's allegations of punitive damages against Urena have been sufficiently pleaded.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  *Hill's Employment*

In June 2009, the City hired Hill as a parttime recreation leader at its community center.  Her main responsibilities, which she competently performed, were to teach preschool classes, prepare schedules for parents, serve food, and clean up.  Hill reported directly to Urena for the duration of her employment with the City.

From the beginning, Urena made offensive and humiliating comments to and about Hill.  Relevant here is that from 2015 through early 2020, Urena "repeatedly" referred to Hill and another employee as "abuelas" (Spanish for "grandmothers").  In Urena's opinion, Hill—who turned 42 years old in April 2015—was of the age when "the mind is not fresh anymore."  In 2016, Hill was diagnosed with diabetes after she had a medical emergency at work that

---

[1]    Background facts are taken from the well pleaded allegations in Hill's second amended complaint (SAC) corresponding to the claims she seeks to revive on appeal.  (*Thomas v. Regents of University of California* (2023) 97 Cal.App.5th 587, 611 (*Thomas*) [reviewing a general demurrer by crediting complaint's factual allegations but disregarding its contentions, deductions, and legal conclusions].)  As to Hill's discrimination and harassment claims, she focuses exclusively on Urena's alleged age- and disability-related conduct that started in 2015 and 2016, respectively; thus, Hill has abandoned her other claims and allegations.  (*Tukes v. Richard* (2022) 81 Cal.App.5th 1, 21 ["if the proponent of a theory does not consider it worthy of recitation to the appellate court, the appellate court is entitled to presume the theory has no merit"].)

3

required a trip to the hospital in an ambulance. From the time of that diagnosis into 2020, Urena "repeatedly mocked" Hill in front of others for being diabetic, "consistently" told them not to give Hill any sweets because they would make her sick, and announced that Hill "could not work much" because of her medical condition.

Hill reached her tipping point in the summer of 2019 after Urena falsely accused her of stealing food. She immediately complained to Adriana Nava, the director of the department to which Hill was assigned, about that accusation and Urena's continuing comments concerning her diabetes diagnosis. To Hill's knowledge, the City did not take any steps to address Urena's behavior.

In March 2020, the City called a meeting for the employees in Hill's department during which it was announced that those working part time were being "temporarily laid off" to mitigate the spread of COVID-19. Once "things stabilized," however, "everyone would receive their jobs back." The City represented that those who were laid off "would not have to reapply as all employees would be, ultimately, re-employed, since the layoff was only temporary and aimed to protect the personnel from getting sick."

Roughly a year later, Hill began calling Urena weekly to inquire about returning to work.[2] When reached, Urena told her that Hill's department was closed and the City did not want anyone in the community center.

---

[2] The SAC alleges the events described in this paragraph took place in 2020, whereas Hill's briefs assert that they occurred in 2021. In responding to the City's demurrer, Hill's counsel represented that he inadvertently used the incorrect date in the SAC. The City agrees these events could not have occurred in 2020 due to the measures taken to prevent the spread of COVID-19. So do we. Therefore, we credit Hill's counsel's explanation and describe these events as occurring in 2021. (See *post*, at pp. 12–13.)

But in May and June of 2021, Hill saw that some of her previously laid off coworkers were back at work.

Not satisfied with Urena's explanations, Hill contacted the El Centro City Hall in June 2021 to inquire about her employment status. She spoke to someone named "Louisa," who confirmed that Hill did not need to apply for her old job and said Urena was responsible for calling her back to work. Hill was not surprised Urena had this responsibility given her past involvement in hiring employees, sometimes without going through the City.

After calling City Hall, Hill again phoned Urena about returning to work. Urena said that everyone who had been laid off needed to apply for their old jobs and that Nava preferred to hire applicants with master's degrees. Although Hill did not have a college degree, she told Urena her prior experience as a recreation leader qualified her to return in that role. Urena replied that "as an old person, [Hill's] brain was not fresh anymore, and that [she] could not do a lot of things due to . . . having diabetes." Moreover, according to Urena, the City "wanted young people with college degrees who had fresh minds and thought outside the box." This was not totally true, as Hill knew the City had hired "many recent high school-graduates . . . not having college degrees." In any case, Hill did not submit a new application for a recreation leader position.

Eventually, all of the parttime workers with the exception of Hill were reinstated. But the events of May and June 2021 were the first indications to Hill that the City would not follow through on its earlier promise to reinstate *all* the parttime workers. As Hill saw it, the disparate treatment by Urena— and by extension the City—turned what was supposed to be a "temporary layoff" into "a termination or, in the alternative, a failure to rehire."

**B.** *Hill's Administrative and Civil Complaints*

The Fair Employment and Housing Act (FEHA or the Act; Gov. Code, § 12900 et seq.)[3] "affords California employees broad protection against discrimination, harassment, and retaliation on any of a wide range of impermissible bases." (*McDonald v. Antelope Valley Community College District* (2008) 45 Cal.4th 88, 106 (*McDonald*).) A person who wishes to bring a civil lawsuit for a FEHA violation must first exhaust the administrative process. (*Ibid.*) Exhaustion entails (1) filing a verified complaint with the Civil Rights Department (CRD) within three years of the allegedly unlawful employment practice, and (2) obtaining a right-to-sue notice.[4] (*Ibid.*; see also § 12960, subds. (c) & (e)(5).)

Generally, CRD investigates a complaint's allegations and decides what actions to take, if any, including whether to initiate a lawsuit in its name on the aggrieved person's behalf. (See § 12965, subd. (a)(1).) At certain points, the agency must either offer or issue a right-to-sue notice that enables the victim to file his or her own civil complaint in lieu of waiting for the investigation to be completed. (*Id.*, subd. (c)(1)(A); see also *McDonald*, *supra*, 45 Cal.4th at p. 106.) The victim may forgo the right to an investigation and

---

[3] Subsequent undesignated statutory references are to the Government Code.

[4] Prior to January 1, 2020, FEHA administrative complaints were required to be filed within one year of the allegedly unlawful employment practice. (§ 12960, as amended by Stats. 2019, ch. 709; see Legis. Counsel's Dig., Assem. Bill No. 9 (2019–2020 Reg. Sess.) § 1.) In addition, before July 2022, CRD was known as the Department of Fair Employment and Housing, often abbreviated to "DFEH" in opinions issued before the name change. (*About the Civil Rights Department* (*CRD*) <https://calcivilrights.ca.gov/aboutcrd/> as of January 10, 2026, archived at <https://perma.cc/BNH9-LG3K>.)

possible administrative remedies altogether by concurrently submitting with his or her complaint a request for an immediate right-to-sue notice. (*Clark v. Superior Court* (2021) 62 Cal.App.5th 289, 300 (*Clark*), citing Cal. Code Regs., tit. 2, § 10005, subds. (c) & (d).) The agency must issue this notice pursuant to such a request, after which the person has one year to file a civil complaint. (§ 12965, subd. (c)(1)(C); Cal. Code Regs., tit. 2, § 10005, subd. (a).)

In January 2023, Hill filed a verified administrative complaint and requested an immediate right-to-sue notice. Her complaint included a narrative discussion of the events discussed above, including the comments Urena made in June 2021. Hill alleged that on the day of the department-wide meeting in March 2020, she was "terminated, laid off, denied hire or promotion" due to discrimination based on her age (over 40) and physical disability (diabetes). Pointing to her meeting with Nava in 2019, Hill also claimed the City retaliated against her for "report[ing] or resist[ing] any form of discrimination or harassment." Finally, Hill accused both Urena and the City of harassing her based on her age and for being diabetic. CRD immediately closed Hill's complaint and issued a right-to-sue notice.

Eight months later, Hill sued the City and Urena. Based on the same narrative stated in her administrative complaint, Hill asserted FEHA claims against the City for age discrimination, disability discrimination, and retaliation—all based on a theory that she had been unlawfully fired—as well as harassment and failure to prevent harassment and discrimination. She also alleged a FEHA harassment claim against Urena and requested punitive damages.

Hill amended her complaint as a matter of right in November 2023 following the filing of demurrers by the defendants. As relevant here, Hill

7

broadened the scope of her FEHA discrimination and retaliation claims to include City's "decision to terminate her employment *and/or not (re-)hire her.*" (Italics added.) She was subsequently given leave to file the operative second amended complaint (SAC) after defendants renewed their demurrers. In addition to adding more detail to support her FEHA claims, Hill alleged two new common law tort claims against the City based on the same conduct underlying her statutory discrimination and retaliation claims: (1) wrongful discharge and (2) wrongful failure to hire.

Defendants again demurred. The City argued that any theory other than that Hill was unlawfully fired in March 2020 was barred for failure to exhaust the administrative process and by the sham pleading doctrine. It contended that the factual allegations supporting Hill's discrimination and retaliation claims fell short because Urena lacked hiring and firing authority and because there was no allegation that a recreation leader position was open in June 2021. As for Hill's harassment claims, both defendants believed the SAC failed to identify any conduct that could be considered harassing. Urena also demurred based on the assertion that most of the allegedly harassing conduct was irrelevant because it occurred more than three years before Hill filed her complaint with CRD.

Urena concurrently moved to strike two sets of allegations from the SAC. The first category concerned alleged harassing conduct that occurred before the limitations period for Hill's harassment claim began. The second category was comprised of Hill's allegations regarding punitive damages. As for the second, Urena reiterated the point made in her demurrer that none of the allegations in the SAC described actionable harassment, much less conduct so egregious as to support a claim for punitive damages.

8

In May 2024, the trial court sustained the defendants' demurrers without leave to amend. According to the corresponding order, the SAC alleged no viable causes of action despite the fact that Hill had amended her pleading two times. The court also found that Hill made no showing she could cure what it characterized, but did not identify, as "fatal" pleading deficiencies. Having dismissed all of Hill's claims, the trial court denied Urena's motion to strike as moot.

## DISCUSSION

Hill appeals the order sustaining defendants' demurrers in order to revive her FEHA age discrimination, disability discrimination, retaliation and harassment claims as well as her common law claims, all of which stem from Urena's alleged discriminatory and harassing conduct. For all but Hill's harassment claims, the SAC must allege that the City took one or more "adverse employment actions" against her. She alleges such actions based on two theories: (1) Urena's comments in June 2021 that Hill had to apply for her old job but that she was too old and sick to perform the work effectively terminated her because the City had promised to reinstate her automatically (the termination theory), and (2) even assuming it was appropriate for the City to require Hill to apply for a recreation leader position, Urena deterred her from doing so based in large part on her age and diabetes diagnosis (the deterred applicant theory).

This appeal involves five main issues. First, the City raises as a preliminary argument that Hill did not exhaust the administrative process for her deterred applicant theory. Were we to disagree, the City contends as a second preliminary matter that this theory must be ignored because it was brought into this case as a "sham" to avoid a demurrer. Third, the City asserts that it cannot be held liable for the alleged discriminatory or

9

retaliatory conduct in taking either employment action because Urena lacked authority to hire or fire employees. Fourth, as to Hill's harassment claims, both defendants argue the only conduct by Urena that is relevant must have occurred within the three-year FEHA limitations period and that none of the incidents from that period, or any other period for that matter, rise to the level of harassment. Finally, if Hill's harassment claim against Urena is revived, these parties dispute whether the SAC sufficiently alleges entitlement to punitive damages.

## A. *Standard of Review of an Order Sustaining a Demurrer*

A complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10, subd. (a)(1).) This requires the plaintiff to identify "the essential facts with ' " ' "particularity sufficient to acquaint a defendant with the nature, source and extent of [his or her] cause of action." ' " ' " (*Thomas*, *supra*, 97 Cal.App.5th at p. 611; see also; see also *Logan v. Southern California Rapid Transit District* (1982) 136 Cal.App.3d 116, 126 (*Logan*) ["to withstand a demurrer, a complaint must allege ultimate facts, not evidentiary facts"].) " '[L]ess specificity is required in pleading matters of which the defendant has superior knowledge,' " which means a plaintiff " ' "need not particularize matters 'presumptively within the knowledge of the demurring' defendant . . . such as a defendant's knowledge or notice or intent." ' " (*Thomas*, at p. 611.)

An order sustaining a general demurrer is reviewed de novo.[5] (*Thomas*, *supra*, 97 Cal.App.5th at p. 611.) " 'We accept as true, and liberally construe, all properly pleaded allegations of material fact, as well as those

---

[5] There is no reporter's transcript of the hearing on the demurrers included in the appellate record. Although it is preferable to have a complete record of a trial court's rulings, the absence of a transcript of these oral proceedings is not fatal to Hill's appeal given the de novo standard of review.

10

facts which may be implied or reasonably inferred from those allegations.' " (*Ibid.*) At the demurrer stage, we are not concerned with the question of Hill's " ' " 'ability to prove [her] allegations, or the possible difficulty in making such proof.' " ' " (*Ibid.*) Rather, our " 'sole consideration is an issue of law—whether the plaintiff's complaint is sufficient to state a cause of action under any legal theory.' " (*Ibid.*) " 'When a demurrer is sustained without leave to amend, it is the duty of the reviewing court to decide whether there is a reasonable possibility that the defect can be cured by amendment. If it can, the trial court has abused its discretion and we must reverse.' " (*Id.* at p. 605.)

## B.    *Preliminary Issues*

### 1.    *The Dates of Relevant Events as Alleged in the SAC*

To a greater or lesser degree, our review of this case has been complicated by the fact that the City refuses to acknowledge what Hill concedes and even Urena appears to accept—that the SAC includes a typographical error with respect to the dates on which certain events allegedly occurred. The SAC pleads that various things—in particular, the last phone call between Hill and Urena—happened in May and June 20*20*. The City's demurrer to the SAC pointed out that these allegations were inconsistent with facts regarding the reopening of City facilities, of which the court could take judicial notice. In response, Hill agreed. Her opposition to the demurrer explained that the reference to "2020" in these paragraphs of the SAC was a typographical error and should have been "2021." But despite this concession, the City's appellate briefing persists in treating the relevant events as having been alleged to have occurred in 2020 rather than,

11

as should be obvious from the context, 2021.[6] We review the sufficiency of the SAC on the assumption that this inadvertent error could be corrected and that it would be an abuse of discretion to deny Hill the opportunity to do so.

2.    *Administrative Exhaustion*

Separate and apart from any asserted pleading defects in the SAC, the City challenges whether Hill exhausted the administrative process for her deterred applicant theory, that is, that Urena's June 2021 comments unlawfully dissuaded her from applying for a recreation leader position. Notwithstanding Hill's reliance on these comments to support the claims in her CRD complaint that she had been impermissibly terminated and/or "denied hire," the City reads that complaint as asserting only a claim of an unlawful termination.  Thus, the City argues, Hill did not preserve the right to litigate any other theory of liability.

When a party obtained an immediate right-to-sue notice, "as a practical matter, *there was no administrative process to exhaust*" because no investigation was conducted.  (*Clark, supra*, 62 Cal.App.5th at p. 305.) In this circumstance, "[t]he administrative exhaustion requirement is satisfied if FEHA claims in a judicial complaint are ' " like and reasonably related to" ' those in the [CRD] complaint [citation] or 'likely to be uncovered

---

6    The City's appellate brief maintains that "[e]very argument about conduct in 2021 in the [Appellant's opening brief] . . . should be disregarded because the SAC does not allege any occurrence in 2021."

in the course of a DFEH investigation.' "[7] (*Clark*, at p. 301.) This assessment is made based on a liberal construction of the administrative complaint. (*Id.* at p. 306.)

We have little trouble concluding Hill exhausted the administrative process for her deterred applicant theory. Her CRD complaint expressly identified this theory of liability based on Urena's June 2021 comments. But even if the agency's investigators missed its mention, the close relationship between Hill's deterred applicant and termination theories makes both fair game for this lawsuit.

3.    *Sham Pleading Doctrine*

Having concluded that Hill preserved the right to pursue her deterred applicant theory, we turn to the City's contention that she is precluded by the sham pleading doctrine from asserting it. Ordinarily, a court will disregard an original complaint when an amended complaint is filed. (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 945.) But " '[i]f a party files an amended complaint and attempts to avoid the defects of the original complaint by either omitting facts which made the previous complaint defective or by adding facts inconsistent with those of previous pleadings, the court may take judicial notice of prior pleadings and may disregard any inconsistent allegations.' " (*Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 447.) "Where no explanation for the inconsistency is offered, the trial court is

---

7    The City argues that the procedures for determining exhaustion described in *Clark* do not apply when the respondent is a public entity. This argument has been forfeited for failure to raise it below. (*In re Campbell* (2017) 11 Cal.App.5th 742, 756.) In any case, at least one reported case involving a public entity has recognized this as the appropriate test (*Kuigoua v. Department of Veterans Affairs* (2024) 101 Cal.App.5th 499, 507–509), a fact the City's argument leaves unaddressed.

13

entitled to conclude that the pleading party's cause of action is a sham and sustain a demurrer without leave to amend." (*Ibid*.)

As the City sees it, Hill's termination and deterred applicant theories suffer from an irreconcilable, inherent inconsistency: "a wrongful 3/19/20 termination requires the City's [COVID-19] explanation to be false, and a wrongful June 202[1] denial of reemployment requires the City's COVID-19 explanation to be true." And because Hill did not address this perceived inconsistency, it believes the sham pleading doctrine requires us to disregard the later-added theory altogether.

But it is clear from the SAC that Hill based her alternative theories of liability on Urena's conduct in May and June of 2021. By June 2021, all the other recreation leaders except Hill had been recalled to work without having to reapply for their old jobs. In contrast, Hill was told she would have to reapply in what Urena said would be a futile gesture. As we read the SAC, Urena's June 2021 comment that Hill needed to apply for her job indicated— evidently for the first time—that she would not be automatically reinstated and had effectively been fired. If Hill were not to succeed under that theory, she believes Urena's attempt to dissuade her from applying would be actionable because FEHA prohibits an employer from discriminating or retaliating against a job applicant.[8]

To the City's point, no explanation was needed for Hill's alternative theories of recovery because there is no inconsistency. The City's reasons for laying Hill off have nothing to do with why she believes the City is liable for

---

[8]    CRD defines "applicant" as someone "who can prove that they have been deterred from applying for a job by an employer's or other covered entity's alleged discriminatory practice." (Cal. Code Regs., tit. 2, § 11008, subd. (b).) We give "great weight" to this definition. (*Jimenez v. U.S. Continental Marketing, Inc.* (2019) 41 Cal.App.5th 189, 197.)

14

discrimination and retaliation.  Even if there were some tension between these alternative theories, it would be proper for Hill to assert both to account for the uncertainty in what the ultimate facts—many of which will be within the City's exclusive knowledge—will show.  (4 Witkin, Cal. Proc. (6th ed. 2025) Pleading, § 417 [plaintiff may plead alternate theories based on uncertainty as to either ultimate facts or legal theories of recovery].)  Having been provided with no reason why Hill's amendments were made to unfairly overcome a demurrer, we decline to conclude she ran afoul of the policy against sham pleadings.

## C.    *Sufficiency of Allegations in the SAC*

### 1.    *FEHA Discrimination and Retaliation Claims*

FEHA makes it unlawful for an "employer: to discriminate against someone by "refus[ing] to hire or employ the person . . . or to bar or to discharge the person from employment" based on age or physical disability.[9] (§ 12940, subd. (a).)  The Act's antiretaliation provision also prohibits an "employer" from "discharg[ing] . . . or otherwise discriminat[ing] against any person because the person has opposed practices forbidden under this part." (*Id.*, subd. (h).)  Hill alleges that Urena's history of commenting on her age and diabetes diagnosis—as well as Urena's authority to call her back to work (or not)—establish that the City had discriminatory motives either to terminate her employment or deter her job application.  Hill further alleges that the City also took these employment actions in retaliation for her complaints to Nava in 2019 about Urena's conduct.

The pleading requirements for Hill's FEHA discrimination and retaliation claims substantially overlap.  The elements of each discrimination

---

[9]    The relevant FEHA provisions apply only to employers of five or more persons (§ 12926, subd. (d)), a threshold met by the City.

claim are that she (1) was a member of a protected class; (2) was qualified for the recreation leader job; and (3) suffered an adverse employment action that (4) was substantially motivated by discriminatory intent. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 (*Guz*).) Only the first and fourth elements are different for her retaliation claim—she must allege that she took part in a protected activity, and "retaliatory animus" was the substantial motivation for the adverse employment action.[10] (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 987–988.)

The SAC alleges facts corresponding to these elements. Hill's diabetes diagnosis (§ 12926.1, subd. (c)) and being over 40 years old when the employment actions were taken (§ 12926, subd. (b)) statutorily place her in two classes of persons who FEHA protects from discrimination (§ 12940, subd. (a)). The City does not dispute that Hill's 2019 complaint to Nava about Urena's conduct was an "[i]nformal complaint[] to management about discriminatory employment practices" that may be "considered sufficient opposition to trigger the prohibition against retaliation." (*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1018.) We can imply an allegation that Hill was qualified to be a recreation leader based on her competent performance of the job and that, contrary to Urena's representation, no degree was needed. We can also imply an allegation that there was an open recreation leader position in June

_____

[10] Hill also attempts to invoke FEHA's antiretaliation provision because she requested an accommodation in April 2020—after she was laid off —for an injury she sustained earlier on the job. There are no allegations in the SAC that Hill was still injured and thus needed an accommodation in May and June of 2021 when she was not recalled to work. Without more, we cannot conclude that her request as currently alleged supports a retaliation claim.

16

2021, given that Urena tried to dissuade Hill from applying for the job rather than simply telling her there were no openings.

These adverse employment actions, which fall within FEHA's three-year limitations period, are covered by the Act's antidiscriminatory provision. (*Guz*, *supra*, 24 Cal.4th at p. 355 [discriminatory firing and denial of a job]; *Abed v. Western Dental Services, Inc.* (2018) 23 Cal.App.5th 726, 740 (*Abed*) ["a job application is not an *element* of the claim" of discriminatory denial of a job].)  The City does not dispute that they are also covered by its antiretaliation provision.[11]  (§ 12940, subd. (h) [prohibiting retaliation against "any person"]; *Sada v. Robert F. Kennedy Med. Ctr.* (1997) 56 Cal.App.4th 138, 159–160 ["a person . . . who seeks to be hired or employed" is protected against both discrimination and retaliation].)  And we must credit Hill's allegations that these employment actions were motivated by discriminatory or retaliatory intent because the reasons why these decisions were made are exclusively within the City's knowledge.  (*Thomas*, *supra*, 97 Cal.App.5th at p. 611.)  In any case, these conclusions are supported by the alleged evidentiary facts of Urena's conduct and Hill's meeting with Nava about it.

For its part, the City argues that *it* did not take any adverse employment actions because Urena lacked hiring and firing authority.  The City is correct that for an institutional or corporate employer to violate FEHA, "the institution or corporation itself must have taken some official action with respect to an employee, such as hiring [or] firing."  (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706 (*Roby*), italics omitted.)  Invoking this principle, the City charges Hill with knowledge of various El Centro city

---

11    The City fails to address Hill's retaliation claim, erroneously asserting that she abandoned it.

ordinances and rules that it contends gave someone other than Urena the authority to make these personnel decisions.[12] In other words, the City contends, it cannot be held liable for Urena's actions that were beyond the scope of her authority.[13]

But employers *are* liable for discrimination or retaliation carried out by an employee who was involved in the allegedly unlawful employment action even if he or she was not the ultimate decisionmaker. (*Abed*, *supra*, 23 Cal.App.5th at pp. 743–744; *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1166–1167.) The SAC alleges facts showing, at a minimum, that Urena was involved in deciding whether Hill would be terminated and/or hired back. These claims, therefore, should have survived the City's demurrer.

2.    *FEHA Harassments Claims*

FEHA prohibits an "employer . . . or any other person,  because of physical disability. . . [or] age, . . . to harass an employee [or] an applicant." (§ 12940, subd. (j)(1).)  Harassing conduct includes " 'epithets, derogatory

---

[12]    These authorities were presented to the trial court in an unopposed request for judicial notice.  Although the record is silent on the court's ruling on that request, we assume it was granted under Evidence Code section 453.

[13]    The City also suggests in passing that Code of Civil Procedure section 818.8 confers immunity for any alleged misrepresentations made by Urena. This argument is forfeited for lack of sufficient development. (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418.)  In any case, immunity is an affirmative defense (see *Wang v. Nibbelink* (2016) 4 Cal.App.5th 1, 10), and thus will be decided on demurrer only when "the face of the complaint discloses that the action is necessarily barred" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183).  The immunity conferred by Code of Civil Procedure section 818.8 concerns only commercial or financial transactions (*Michael J. v. Los Angeles County Dept. of Adoptions* (1988) 201 Cal.App.3d 859, 868–872), which are not at issue here.

comments or slurs on a basis enumerated in' " FEHA. (*Bailey v. San Francisco District Attorney's Office* (2024) 16 Cal.5th 611, 626.) It is also unlawful under the Act for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).)

Hill asserts claims of harassment against both Urena and the City. The SAC identifies Urena's comments concerning Hill's age and diabetes that started in 2015 and 2016, respectively, and continued through June 2021 as the actionable harassing conduct. For Hill's harassment claim against Urena to survive a demurrer, she must allege that (1) she was subjected to unwelcome harassment based on a protected status, and (2) the harassing conduct either "unreasonably interfered with [her] work performance or created an intimidating, hostile, or offensive work environment." (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 876; § 12923, subd. (a).) As for the City, it is strictly liable for any of Urena's harassing conduct carried out in her supervisory capacity. (§ 12940, subd. (j)(1); *Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577, 588– 589.)

Hill also asserts a claim of failure to prevent harassment and discrimination against the City. The elements of this claim are: (1) plaintiff was subjected to discrimination, harassment or retaliation[14]; (2) defendant failed to take all reasonable steps to prevent the wrongful conduct; and (3) this failure caused plaintiff to suffer damage. (*Caldera v. Department of Corrections and Rehabilitation* (2018) 25 Cal.App.5th 31, 43–44.)

---

14 Retaliation under FEHA includes "discriminat[ing]" against an employee who opposed an action the statute forbids. (§ 12940, subd. (h).) Thus, "discrimination" as used in subdivision (k) of section 12940 includes retaliation.

19

The parties appropriately focus their arguments on whether Hill sufficiently alleged age- and disability-based harassing conduct by Urena, whom everyone agrees was Hill's supervisor for the duration of her employment. We have already explained that Hill's age and diabetes diagnosis are two protected classes for the purposes of applying FEHA. (See *ante*, at pp. 17–18.) Likewise, we have already determined the SAC adequately alleges discrimination and retaliation as required for Hill to plead her failure-to-prevent claim. (See *ante*, at pp. 17–20.) Whether the City took all reasonable steps to prevent Urena's alleged discriminatory and harassing need not be pleaded with particularity because the efforts it took may not be known to Hill. (*Thomas*, *supra*, 97 Cal.App.5th at p. 611.) And the City does not call into question Hill's factual contention that the City's failure to prevent these categories of conduct harmed her.

Turning to the Urena's allegedly harassing conduct, there are two points of contention. Defendants argue that because these are FEHA claims, Hill may only assert harassment based on allegations of incidents occurring on or after January 9, 2020—three years before Hill filed her CRD complaint. Regardless of whether we agree on this timing issue, defendants maintain that none of the alleged conduct was severe or pervasive enough to rise to the level of harassment regardless of when it occurred. Hill counters that she has alleged sufficient harassing conduct by Urena within the limitations period, but also that she is entitled to rely on earlier acts of harassment.

Although the SAC is not a model of clarity with respect to what incidents happened when, we agree with Hill that it sufficiently alleges Urena harassed her during the limitations period. According to the SAC, in 2020 while Hill was an employee, Urena "repeatedly" called her an "abuela," said that "she was already at an age where her mind was not fresh

20

anymore," "repeatedly mocked" her diabetes diagnosis, and "constantly" referred to her medical condition in front of others during work events. Urena reiterated those beliefs during her phone call with Hill—then an applicant for the recreation leader position—in June 2021. Hill also alleged the ultimate fact that a reasonable person would find Urena's actions created a "hostile, intimidating, offensive, oppressive, and abusive[]" work environment.

We recognize that prevailing on a hostile work environment claim requires a plaintiff to prove he or she has been subjected to more than just "occasional, isolated, sporadic, or trivial" offensive conduct. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 283.) But defendants' contention that Urena's actions belong in these nonactionable categories is unavailing at this juncture because we are not concerned with whether Hill's allegations will carry her burden during later stages of this case. (*Thomas*, *supra*, 97 Cal.App.5th at p. 611; cf. § 12923, subd. (e) ["hostile working environment cases involve issues 'not determinable on paper' "].) Nor do we find persuasive defendants' argument that Urena's conduct was too infrequent to constitute harassment, considering that a "single incident" may establish "the existence of a hostile work environment." (§ 12923, subd. (b).) Hill's harassment and failure-to-prevent harassment claims, therefore, should have survived defendants' demurrers based just on Urena's conduct alleged to have occurred during the limitations period.

Because the pleadings define the issues for subsequent proceedings (*Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1519–1520), we address the parties' dispute as to whether, later in the case, Hill is precluded from relying on Urena's alleged conduct that occurred before the limitations period began. As a general rule, harassment occurring outside

21

of FEHA's three-year limitations period is not actionable. (*Dominguez v. Washington Mutual Bank* (2008) 168 Cal.App.4th 714, 721.) The "continuing violations doctrine" is an exception to this rule that "comes into play when an employee raises a claim based on conduct that occurred in part outside the limitations period." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 812.) A plaintiff must establish three facts to rely on this doctrine: "(1) the conduct occurring within the limitations period is similar in kind to the conduct that falls outside the period; (2) the conduct was reasonably frequent; and (3) it had not yet acquired a degree of permanence." (*Dominguez*, at p. 721.) " 'Permanence' means that an employer's actions and statements make clear to a reasonable employee that any further informal efforts to end the discrimination will be futile." (*Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663, 695.)

According to the SAC, Hill was subjected to the same types of age- and disability-related comments by Urena both before and after the limitations period and with some frequency. The defendants suggest that Urena's alleged conduct occurring before the limitations period began fell short of harassment. But, again, resolving disputes of fact is not within the scope of our review. In that same vein, we are not required to assess whether the City's alleged nonresponse to Hill's attempt to end Urena's behavior in the summer of 2019 signaled that further informal attempts would be futile. (See *Birschtein v. New United Motor Manufacturing, Inc.* (2001) 92 Cal.App.4th 994, 1006–1007 ["we need not, at [the summary judgment stage], attempt an assessment of the adequacy of defendant's response to plaintiff's complaints regarding Bonillia's conduct. The superior court will be free to evaluate this and related issues in light of the evidence as it develops at trial"].) In short, the allegations in Hill's SAC preserved her ability to attempt to rely on the

continuing violations doctrine to support her harassment claims. Whether she can successfully do so remains to be seen.

3. *Hill's Common Law Tort Claims*

As noted, the SAC includes common law tort claims of wrongful discharge and wrongful failure to hire against the City that are based on the same conduct underlying Hill's FEHA discrimination and retaliation claims. A plaintiff may pursue these statutory and common law avenues of relief simultaneously (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 82), and coextensive FEHA and tort claims, such as Hill's, rise or fall on their merits together (see *McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 472 (*McVeigh*)). Having already concluded that Hill's FEHA claims should have survived the City's demurrer, her tort claims must also be reinstated if the law recognizes her right to bring them.

In *Tameny v. Atlantic Richfield Company* (1980) 27 Cal.3d 167 (*Tameny*), an employee was allegedly fired for refusing to follow an employer's directive to commit a crime. The Supreme Court held that on these facts, the employee could bring an action of tortious wrongful discharge. (*Id.* at pp. 169, 178.) The court reasoned that "an employer's obligation to refrain from discharging an employee who refuses to commit a criminal act does not depend upon any express or implied ' "[promises] set forth in the [employment] contract," ' 'but rather reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes.' " (*Id.* at p. 176.) "As such," the court continued, "a wrongful discharge suit exhibits the classic elements of a tort cause of action." (*Ibid.*) And so, " 'where the employer's motivation for [a] discharge contravenes some substantial public policy principle, then the employer may be held liable to the employee for damages.' " (*Id.* at p. 177.)

23

In accordance with *Tameny*, a plaintiff may prosecute a wrongful discharge claim based on discrimination or retaliation because firing an employee for these reasons violates the policies underlying FEHA. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 897 [age discrimination]; *City of Moorpark v. Superior Court* (*Dillon*) (1998) 18 Cal.4th 1143, 1161 [disability discrimination]; *McVeigh*, *supra*, 213 Cal.App.4th at p. 472 [retaliation].)  Accordingly, Hill may bring a wrongful discharge tort claim.

We reach a different conclusion as to Hill's wrongful failure-to-hire claim.  "[T]he breach of an employment relationship is an indispensable element of the tort" discussed in *Tameny* "because it serves factually as the instrument of injury." (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900.)  Consequently, "[t]he employer . . . has not committed a tort against [a] prospective employee because it owed no duty to that person." (*Williams v. Sacramento River Cats Baseball Club, LLC* (2019) 40 Cal.App.5th 280, 288.)  Hill's wrongful failure-to-hire claim is premised on being a "deterred applicant" to whom the City owned no duty; thus, this claim was properly dismissed. (*Ibid.*, see also *id.* at pp. 287–288 [job applicant's theory of illegal failure to hire must be brought under FEHA].)  Accepting the facts underlying this alternative theory, we see no scenario in which Hill could credibly allege she was anything other than a prospective employee at that juncture; thus, the court's order denying leave to amend her unlawful failure to hire claim was appropriate.

**D.**   *Urena's Motion to Strike Allegations of Punitive Damages*

For the benefit of the court on remand, we address Urena's motion to strike Hill's claim for punitive damages.[15]  Subdivision (a) of Civil Code section 3294 provides that a plaintiff "in an action for the breach of an obligation not arising from contract" may recover punitive damages against a defendant who "has been guilty of oppression, fraud, or malice."[16]  The SAC alleges that Hill may recover punitive damages because Urena's alleged harassing conduct met these requirements.  (*Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1147–1148 [§ 3294 "applies to actions brought under FEHA"].)  Urena moved to strike these allegations for being too conclusory and for relying on conduct that fell short of these statutory standards.  As noted, the motion to strike was denied as moot because all of Hill's claims were dismissed without leave to amend.  Having revived Hill's harassment claim against Urena, we turn to these parties' respective

---

[15]   It is unnecessary for us to address other aspects of Urena's motion to strike.  Some pertain to allegations concerning claims as to which the demurrer was properly sustained.  Others address allegations we have already concluded are properly included in the SAC.

[16]   Oppression is "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."  (Civ. Code, § 3294, subd. (c)(2).)  Fraud means "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."  (*Id.*, subd. (c)(3).)  And " '[m]alice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."  (*Id.*, subd. (c)(1).)

arguments on appeal concerning the sufficiency of the punitive damage allegations.[17]

A motion to strike a claim for punitive damages is akin to a demurrer because it too "challenges the legal sufficiency of the complaint's allegations." (*Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 53.) Accordingly, we " ' "read allegations of a pleading subject to a motion to strike as a whole, all parts in their context, and assume their truth." ' " (*Kaiser*, *supra*, 203 Cal.App.4th at p. 704.) At minimum, a plaintiff must "set forth the elements as stated in [Civil Code] section 3294," as well as "specific factual allegations showing that defendant's conduct was oppressive, fraudulent, or malicious to support a claim for punitive damages." (*Today's IV*, *Inc. v. Los Angeles County Metropolitan Transportation Authority* (2022) 83 Cal.App.5th 1137, 1193.) Where, as here, the plaintiff alleges an intentional wrong, "a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure." (*G. D. Searle & Co. v. Superior Court* (1975) 49 Cal.App.3d 22, 29.)

The punitive damages allegations in the SAC satisfy this standard. Hill's pleading describes specific incidents of age- and disability-related harassment by Urena and ties them to the statutory definitions of oppression, fraud, and malice. Thus, the SAC "contain[s] sufficient allegations of fact which if proven would sustain an award of punitive damages." (*Monge v. Superior Court* (1986) 176 Cal.App.3d 503, 512.) To Urena's points, it is not our role at this juncture to decide whether

---

[17] We ordinarily decline to address matters the trial court did not reach. We make an exception here because this issue is fully briefed and we would review de novo the trial court's ruling on this motion to strike. (*Kaiser Foundation Health Plan, Inc. v. Superior Court* (2012) 203 Cal.App.4th 696, 704 (*Kaiser*).)

her alleged conduct will be deemed egregious enough by the factfinder to meet these statutory standards.  (*Ibid.*)  Hill has alleged intentional conduct by Urena designed to deny her reinstatement to her prior job and to discourage her from reapplying.  Urena supposedly took these actions for an improper purpose and by means of misstatements to Hill.  Nothing more was required of Hill at this stage of the proceedings to establish her right to pursue these additional damages.

## DISPOSITION

The judgment is reversed with directions to enter a new order overruling defendants' demurrer as to the first, second, fifth, sixth, seventh, and eighth causes of action in Hill's second amended complaint.  Hill shall recover her costs on appeal.


DATO, J.


WE CONCUR:



IRION, Acting P. J.



DO, J.

27